**Glenn L. GREENE, Jr., Movant,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 92–SC–1027–KB.

Supreme Court of Kentucky.

Aug. 24, 1995.

Frank E. Haddad, Jr., Peter L. Ostermiller, Louisville, for movant.

Bruce K. Davis, Barbara S. Rea, Kentucky Bar Ass'n, Frankfort, for respondent.

## OPINION AND ORDER

Glenn L. Greene Jr. has filed an application for reinstatement to the practice of law in the Commonwealth of Kentucky after having been disbarred in 1974. Greene has, through great effort and after many years, been able to rehabilitate himself and merit reinstatement. We will detail his misconduct and rehabilitation.

Green was disbarred following his guilty plea to the federal offense of mail fraud. He defrauded 26 investors of a total in excess of $250,000. Greene served one year in prison before being released on parole in August, 1974.

One of the conditions of his probation was that he pay 25% of his gross income to his victims, pro rata, during the five-year probationary period. As a result of the court-ordered restitution, approximately $105,000 was distributed to the defrauded investors at the end of Greene's probation in 1979. Prior to his criminal indictment, Greene voluntarily paid restitution in excess of $10,000.

In January 1982, Greene entered a thirty-day in-patient treatment program for alcohol abuse. Greene followed that program with participation in Alcoholics Anonymous. He has been active in AA and "clean and sober" since 1982. The resolution of his problem with alcohol has also resolved his gambling problem which was an offshoot of and fueled by his alcohol abuse.

Also in 1982, Greene filed an application for reinstatement with the Kentucky Bar Association. At the time of his 1982 application, Greene had substantial debts, most of which were due to unpaid taxes dating from the period he was paying 25% of his gross income in court-ordered restitution. He had filed tax returns for the periods he was unable to pay and had entered into a payment plan with the IRS. Greene's application was ultimately denied based on Greene's failure to make any restitution other than that ordered by the federal court, lack of any definite plan to make restitution, and substantial debts which placed him in a similar financial position to that when he defrauded the investors.

Greene filed another application for reinstatement in 1987. That application was accompanied by a Voluntary Restitution Plan for the defrauded investors. Greene voluntarily withdrew his application in 1988 because of his ongoing financial problems and was forced to abandon his restitution plan after paying an additional $1,263.62 to the investors.

In 1990, Greene filed for bankruptcy and discharged over $200,000 in credit card debts and bank loans. The discharged debts were incurred over a period of time, many of them after his incarceration while paying the court-ordered restitution, and his debts continued to increase after that time. After his

probationary period, Greene was engaged in a payment plan to the IRS, and he provided financial assistance to his six children to aid in paying for college (financial aid which Greene now acknowledges he could not really afford). Greene borrowed heavily during this period, utilizing bank loans and credit cards.

In 1990, Greene owed $71,000 in federal taxes. He now has no outstanding tax obligations to any state or federal authority. Since 1990, Greene has also repaid approximately $10,000 to the Bank of Harlan for loans which were discharged in the bankruptcy.

In December 1992, Greene filed his current application for reinstatement. In 1994, he filed a Voluntary Restitution Plan indicating he would pay 5% of his after tax income into an escrow account with distributions to the defrauded investors to be made on a quarterly basis. The plan provides for quarterly reports to the KBA and acknowledges that continued compliance with the restitution provisions shall be a condition of his reinstatement to the KBA and failure to comply shall be grounds for revoking any reinstatement ordered by this Court.

From June 1988 (when Greene abandoned his 1987 plan) to his renewed restitution plan in 1994, Greene had not made any restitution as he paid on his tax liabilities and some of the debts that were discharged in bankruptcy. As part of the 1994 plan, in March 1994 he distributed among the investors 5% of his after tax income from June 1988 through December 1992. He has since made additional distributions.

Greene sent the defrauded investors a copy of his distribution plan and a letter indicating he had an application for reinstatement to the Kentucky bar pending in this Court. None of the investors have indicated any problems with the plan or with Greene's application for reinstatement.

Greene hopes to make full restitution to the defrauded investors in his lifetime, but also believes it is reasonably possible to complete restitution in five to seven years. He hopes to pay more than the minimum of 5% and testified it was quite possible he could pay in the neighborhood of $15,000 to $25,000 per year.

Greene provided affidavits and testimony from individuals, including a U.S. district court judge and a bank president, who have known him, both personally and professionally, for a number of years. Testimony from these witnesses indicated many of Greene's financial problems were due to the court-ordered restitution of 25% of his gross income. His current financial situation was characterized as "sound, very good." Greene has been involved with AA and has not had a drink since 1982. The witnesses testified he has a good reputation for honesty and integrity and would be an able attorney and further testified they would recommend Greene as an attorney if he were reinstated. The bank president testified that Greene performed excellent title abstract work for Harlan attorneys and that he would recommend that the bank use Greene if he were reinstated. Testimony indicated Greene has straightened out his life and rehabilitated himself personally, professionally, and financially.

Both the Character and Fitness Committee and the Trial Commissioner recommended that Greene be reinstated. The Board of Governors, by a vote of 10 to 7 recommended against reinstatement.

▮▮▮ In *In re Cohen*, Ky., 706 S.W.2d 832 (1986), we set out a number of factors to be determined in deciding whether an attorney should be reinstated to the practice of law. The Board of Governors focussed on one of those factors, the nature of the misconduct leading to disbarment, as the most significant factor. Although it is *a* factor, and Greene's misconduct was very serious, it is *not* the most significant in determining whether an attorney should be reinstated. The "fact that one has transgressed does not forever place him beyond the pale of respectability." *In re May*, Ky., 249 S.W.2d 798 (1952).

Other factors are that the attorney manifest a sense of wrongdoing and realize the seriousness of his prior conduct, both of which Greene has done and Cohen did not do. Also, the attorney's previous and subse-

quent conduct in regard to the practice of law, should be considered. There is no indication of any problem with Greene's law practice prior to disbarment, nor is there any indication Greene has engaged in the practice of law since his disbarment. The attorney's conduct and character since disbarment also must show he is worthy of the public's confidence and trust. Greene's conduct and character, outside the financial realm, do show he is currently worthy of public trust.

The bulk of Greene's financial problems, culminating in his bankruptcy, stemmed from his original misconduct which resulted in his felony conviction and subsequent restitution and tax problems. Although Greene did not make the best financial choices in providing financial assistance he could not afford to his children, and his 1990 bankruptcy is troubling, Greene's circumstances warranted turning to the remedy provided by federal law for persons in such situations and should not exclude his reinstatement. Greene's current financial situation is sound. His only debts now appear to be restitution to the defrauded investors.

■ "The ultimate and decisive question is whether the applicant is now of good moral character and is a fit and proper person to be reentrusted with the confidence and privilege of being an attorney at law." *In re Cohen, supra* at 834. In *Cohen,* Bernhardt Cohen did "not appreciate the nature and quality of his original mistake," *Id.* at 834, and he "was less than candid with the Character and Fitness Committee." *Id.* at 835. Neither is true in Greene's case.

Also, in *Cohen,* the trial commissioner found there was "an overwhelming lack of evidence" on which to support Cohen's reinstatement and this Court concluded that the evidence lacked the "persuasive quality necessary to induce belief in the applicant's present professional competency and good moral character." Greene has persuasively shown his present professional competency and good moral character.

In a case similar to Greene's, Ollie James Cohen in *In re Cohen,* Ky., 401 S.W.2d 54 (1966), made no attempt to satisfy a civil fraud judgment rendered against him ten years prior to his application for reinstate-

ment. The KBA found that this failure, including the failure to contact the wronged persons or arrange for future payment, indicated Cohen's failure to be rehabilitated. In addition, the KBA pointed out several instances of Cohen's behavior which were inconsistent with the good character necessary to be reinstated, and Cohen produced very little evidence of any substantial facts which tended to show any significant rehabilitation.

In this case, testimony indicated that Greene's failure to make restitution payments was due to his financial condition and not due to lack of rehabilitation. He has contacted the wronged persons, has arranged a repayment plan and is currently making restitution. Also, Greene has produced affidavits and testimony regarding specific and substantial facts tending to show significant rehabilitation—his lifestyle, personal life and financial situation have all changed.

The application of Glenn L. Greene Jr. for reinstatement to the practice of law in the Commonwealth of Kentucky is hereby approved, subject to completing the requirements of SCR 3.500(3), including the successful passage of the Bar Examination, and payment of costs and on the following conditions:

1) Greene continue to make restitution payments of at least 5% of his after-tax income to the defrauded investors; and

2) Greene provide quarterly reports to the KBA on the progress of restitution.

Failure to comply with either of these conditions shall be grounds for revoking his license to practice law.

LAMBERT, LEIBSON, REYNOLDS and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

FUQUA, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the Opinion and Order of the majority because Greene has not yet sustained his burden of proving his fitness for reinstatement to the

practice of law as required by prior cases of this Court. The Board of Governors of the Kentucky Bar Association was correct when it determined that the application should be denied. This Court has improvidently substituted its view of the case for that of the Board of Governors.

The Majority Opinion has recited in some detail the misconduct which caused Greene to be disbarred in 1972. He was originally admitted to the practice of law in Kentucky in 1958 and also obtained a license to practice law in Florida in 1961. Other than a period from 1960 to 1972, when he lived in Florida and during his one year incarceration, Greene has lived and worked in the Harlan area. He served slightly more than one year in prison and was released in 1974 on five years' probation which was completed in August 1979.

One of the conditions of his probation was that he pay 25 percent of his gross income to his victims, pro rata, during the five year probation period. After his indictment, but before incarceration, he had repaid $10,000 to his victims and after serving his prison term, he paid an additional $107,000 into court for restitution, for a total of $117,000 repaid. No other significant restitution was undertaken until it became a factor in this reinstatement process.

Greene applied for reinstatement on two previous occasions. His application in 1982 was denied by this Court. In 1987, he again filed for reinstatement, but voluntarily withdrew the application because of his determination that his personal financial situation had not substantially improved since his previous application was denied. At the time the plan was abandoned, Greene had paid an additional $1,263 to the victims.

Greene believes that his post-disbarment financial problems resulted from the court-ordered restitution of 25 percent of his gross income from 1974 to 1979 and the financial assistance he gave his six children by putting them through college. He was unable to pay in full all taxes due and to assist his children at college.

Greene was divorced from his first wife and the mother of his six children in 1979

and remarried in 1990. He has a young child from the second marriage. The second Mrs. Greene is employed and is able to contribute financially to the household.

Since disbarment, Greene has worked in labor relations and coal acquisitions in the coal industry and has performed title abstract work and other duties for attorneys in the Harlan area. He has not practiced law.

As part of his present application for reinstatement, he submitted a voluntary restitution plan whereby he has begun repaying the remaining principal amounts due to the victims of his criminal activity at the rate of 5 percent of his net income, to be paid on a quarterly basis. On March 1, 1994, Greene paid the sum of $1,775 as restitution for that quarter of 1994. The second distribution was made in June 1994, and a third distribution in December 1994.

Greene is now 61 years of age and if reinstated, plans to go into practice with his uncle, an attorney in Harlan, who is said to be close to retirement age. Greene hopes to make full restitution to the defrauded investors in his lifetime, but believes it is reasonably possible to complete restitution in five to seven years. As the majority opinion notes, he hopes to pay more than the minimum 5 percent, and testified that it was quite possible he could pay in the neighborhood of $15,000 to $25,000 per year.

I believe that the Board of Governors of the Kentucky Bar Association was correct when it recommended that Greene be denied reinstatement at this time. Reinstatement to the practice of law after disbarment is provided by SCR 3.520. Reinstatement is not automatic. Such an applicant must complete a minimum number of continuing legal education credits, be certified by the Character and Fitness Committee and the Board of Governors of the Kentucky Bar Association following an appropriate investigation. The applicant bears the burden of proving by substantial evidence his qualification for reinstatement. SCR 3.330; *Kentucky State Bar Assn. v. Smith,* Ky., 528 S.W.2d 672 (1975). This Court is not bound by recommendations of the Board of Governors, but frequently gives great deference to the recommendation of the Board. The Supreme Court is the

final arbiter of the facts, the law and the fitness of the applicant to resume the public trust involved in the practice of law. In this case, the Board properly relied on the factors enumerated in *In re Cohen,* Ky., 706 S.W.2d 832 (1986).

In *Cohen,* this Court stated that the reinstatement process necessarily included a review of the nature of the conduct which led to the original discipline, as well as the conduct during the period of disbarment. In this case, the Board of Governors was not persuaded that Greene had satisfied all the standards for reinstatement set out in *Cohen.* The Board determined that the nature of the original misconduct, mail fraud and misappropriation, is a significant factor to be considered in the reinstatement process. The Board correctly found that Greene has not sustained his burden of proof concerning his appreciation of his prior fraudulent conduct. The Board determined that the rehabilitation process is as yet insufficient to warrant reentry into the legal profession. The Board particularly determined that his conduct and character since disbarment did not show that Greene is worthy of public confidence and trust. It also determined that the ultimate and decisive question is whether an attorney is of good moral character and is fit to reenter with the confidence and privilege of being an attorney. Clearly, the fraudulent conduct which led to Greene's conviction and disbarment is the total opposite of trust and confidence which should be found in a member of the legal profession. The Board properly found that his sporadic and incomplete restitution efforts earlier were a considerable impediment to reinstatement at this time. The nature and seriousness of the conduct which led to disbarment cannot be overstated. The theft of $270,000 from 26 investors is obviously of great concern in evaluating the qualifications of anyone who wishes to be a lawyer. Although these victims were repaid approximately 40 percent of the principal amount stolen within ten years, pursuant to court order, Greene now hopes to begin voluntarily repaying the remaining 60 percent owed in order to gain reinstatement. The victims of the fraud, some of whom are now dead, or otherwise unknown, after 25 years, have not and will not be made whole because of the passage of time and the lack of interest on the principal originally stolen. Obviously this is a significant factor in the misconduct and resulting harm to the victims.

The Board properly determined that there was a tragic but consistent lack of appreciation for the seriousness of the problem as demonstrated by the 1982 and 1987 requests for readmission prior to Greene getting his financial affairs in manageable order. Greene has a great propensity for confidence and optimism, but his prior conduct does not support such an optimistic view. The fact that Greene is able to propose a repayment plan at all is a result of his filing bankruptcy in 1990. The prudence and selection of financial management during the past 20 years by Mr. Greene is not inspiring. The offer of a 5 percent gross payment to debtors is modest at most.

Greene's desire to contribute to the education of his children is laudable but borrowing money at credit card interest rates in order to do so is not fiscally sound. Using the limited funds to repay discharged debts or to assume obligations of others is imprudent, particularly if the original victims remain unreimbursed.

The Board was correct in refusing reinstatement because Greene has failed to appreciate the nature and quality of his original mistake. *Cohen, supra.* Sympathy and mitigation should not be valid considerations in judging the merits of reinstatement. Similar reinstatement was denied to Ollie James Cohen in *In re Cohen,* Ky., 401 S.W.2d 54 (1966). It is the responsibility of the reviewing Board and the Supreme Court to look beyond individual concerns of mercy for the applicant for reinstatement and to consider the responsibility of lawyers to the public. The responsibility of this Court is to protect the public from anyone who claims to be a lawyer from misdealing or misrepresentation. The considerable confidence of Greene that he can handle these matters is not shared. Certainly there have been significant steps toward personal rehabilitation, but these efforts are not a substitute for current fitness to reenter the practice of law. Although Greene has made considerable progress to-

wards better management of his finances, the task is not yet complete.

I would adopt the decision of the Board of Governors and deny reinstatement.