**In the Matter of the REINSTATEMENT OF Jon E. WIEDERHOLT, Petitioner.**

No. S–9171.

Supreme Court of Alaska.

June 15, 2001.

John R. Strachan, Anchorage, for Petitioner.

Mark Woelber and Stephen J. Van Goor, Alaska Bar Association, Anchorage.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. *INTRODUCTION*

Disbarred attorney Jon E. Wiederholt seeks review of the Alaska Bar Association Disciplinary Board's denial of his petition for reinstatement to the practice of law. Because the board took all of the relevant factors into account and because the weight of the evidence supports the board's findings, we affirm the decision not to reinstate Wiederholt.

## II. *FACTS AND PROCEEDINGS*

On July 8, 1994 this court disbarred Jon E. Wiederholt from the practice of law for (1) filing a pleading and affidavit stating that his client's judgment had not been satisfied when he knew that it had; and (2) forging his client's signature to endorse a check.[1]

After disbarment, Wiederholt worked in the construction field for approximately one year. More recently he was employed as a paralegal and contract legal research analyst by six Anchorage-area attorneys.

On June 22, 1999 Wiederholt filed a petition for reinstatement pursuant to Alaska Bar Rule 29, claiming that he had met the terms and conditions of this court's order imposing disbarment and requesting reinstatement to the practice of law.[2] Wiederholt's petition was heard before the Alaska Bar Association's Area Hearing Committee in September and October 1999.[3] In February 2000 the Hearing Committee recommended that Wiederholt's petition be denied because he did not meet his Rule 29 burden of proving (1) that he was morally fit and (2) that his reinstatement would not be detrimental to the integrity and standing of the Bar, the administration of justice, and the public interest. In March 2000 the Alaska Bar Association Disciplinary Board[4] unanimously adopted the findings, conclusions, and recommendation of the Hearing Committee that Wiederholt not be reinstated.

Wiederholt appeals.

## III. *STANDARD OF REVIEW*

This is a matter of first impression; no disbarred attorney has ever petitioned this court for reinstatement. Consequently, we have never specified what standard of review governs reinstatement.

■ To the extent that this case requires the interpretation of the requirements of the Alaska Bar Rules, it is a question of law that we review under the independent judgment standard.[5]

■ With regard to the review of the Disciplinary Board's findings of fact, we view reinstatement as part of attorney discipline. We therefore employ the same standard used in reviewing attorney discipline proceedings:

> Though this court has the authority, if not the obligation, to independently review the entire record in disciplinary proceedings, findings of fact made by the Board are nonetheless entitled to great weight. The deference owed to such findings derives from the responsibility to conduct disciplinary proceedings which this court has delegated to the Bar Association. Where findings of fact entered by the Board are challenged on appeal to this court, . . . the

---

1. *See In re Wiederholt*, 877 P.2d 765, 768–69 (Alaska 1994). This court also weighed Wiederholt's acts of kicking opposing counsel and engaging in abusive discovery tactics in its decision. *See id.* This court found these four incidents sufficient grounds for disbarment and did not consider the other grievances that were brought against Wiederholt, which included improper sexual advances to a client, using threatening language towards opposing counsel, direct contact with an opposing party who was represented by counsel, and writing a threatening letter to an unrepresented claimant on behalf of a client. *See id.*

2. Pursuant to Alaska Bar Rule 29, a disbarred attorney is eligible for reinstatement to the practice of law after a five-year period. *See* Alaska Bar R. 29(b)(5). This rule further provides that a petitioner seeking reinstatement must demonstrate "that (s)he has the moral qualifications, competency, and knowledge of law required for admission to the practice of law in this State and that his or her resumption of the practice of law

in . . . the State will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest[.]" *See* Alaska Bar R. 29(c)(1).

3. According to Bar Rule 29, a preliminary hearing on all petitions for reinstatement is held before an Area Hearing Committee in the jurisdiction where the petitioner had maintained an office. *See* Alaska Bar R. 29(c)(1). After the Hearing Committee issues a recommendation, the Alaska Bar Association's Disciplinary Board reviews the Hearing Committee's findings and makes a recommendation to this court. *See* Alaska Bar R. 29(c)(2).

4. This opinion will refer to the Alaska Bar Association, in its capacity as a party, as "the bar association." It will refer to the Alaska Bar Association Disciplinary Board as "the Disciplinary Board" or "the board."

5. *See Wiederholt*, 877 P.2d at 767.

respondent attorney bears the burden of proof in demonstrating that such findings are erroneous.... As a general rule, moreover, we ordinarily will not disturb findings of fact made upon conflicting evidence.... [6]

▮ When deciding appropriate punishment, we need not accept the Disciplinary Board's recommendation but may exercise independent judgment.[7] In exercising our independent judgment as to the appropriate sanction, we are guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards); [8] however, we are not constrained by them.[9]

## IV. *DISCUSSION*

### A. *Requirements for Reinstatement of a Disbarred Attorney*

#### 1. *Reinstatement in general*

##### a. *The presumption against reinstatement*

▮ The bar association argues that this court should recognize a presumption against reinstatement after disbarment.

According to the American Bar Association (ABA), because the purpose of lawyer discipline is not punishment, disbarred attorneys may be readmitted [10] to practice. Nevertheless, the ABA believes that the presumption should be against readmission.[11]

Other jurisdictions considering reinstatement matters have followed the ABA, explicitly recognizing the existence of a presumption against readmission.[12] The Pennsylvania Supreme Court has even gone so far as to say that disbarred attorneys have "no basis for an expectation ... of the right to resume practice at some future point in time." [13]

The purpose behind the presumption is protection of the public. This reflects the purpose of the disciplinary process: to protect the public, not to punish the lawyer.[14] According to the South Dakota Supreme Court, a court must "endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer." [15] Similarly, the Oregon Supreme Court has stated that "[a]ny significant doubt about

6. *In re Triem,* 929 P.2d 634, 640 (Alaska 1996) (quoting *In re West,* 805 P.2d 351, 353 n. 3 (Alaska 1991)).

7. *Id.*

8. *Id.* (citing *In re Buckalew,* 731 P.2d 48, 51–52 (Alaska 1986)).

9. *Id.* (citing *In re Frost,* 863 P.2d 843, 854 (Alaska 1993)). Most courts reviewing a bar association disciplinary board's recommendation on reinstatement exercise original jurisdiction and review the matter under a *de novo* or independent judgment standard. *See In re Fogel,* 679 A.2d 1052, 1054 (D.C.App.1996); *Montgomery v. Disciplinary Bd. of the Supreme Court* (*In re Montgomery*), 566 N.W.2d 426, 428 (N.D. 1997); *In re Katz,* 907 P.2d 1029, 1030 (Okla. 1995); *In re Griffith,* 323 Or. 99, 913 P.2d 695, 699 (1996). At the same time, these jurisdictions give deference to the disciplinary board's findings of fact, conclusions, and recommendations. *See Fogel,* 679 A.2d at 1054; *Montgomery,* 566 N.W.2d at 428.

10. *See* ABA Standards, Standard 2.10 (Readmission and Reinstatement). The ABA uses the term "readmission" to refer to the return of a disbarred attorney to the practice of law and uses the term "reinstatement" to refer to the return to practice of a suspended lawyer. *See id.* The Alaska Bar Rules use the word "reinstatement" to cover both of these situations. *See* Alaska Bar R. 29(a). This opinion uses "reinstatement" except when referring to the American Bar Association's position.

11. *See* ABA Standards, Standard 2.10 (Readmission and Reinstatement). Because we are guided by the American Bar Association's Standards for Imposing Lawyer Sanctions when exercising independent judgment on lawyer discipline matters, *Triem,* 929 P.2d at 640, the ABA Standards regarding the presumption against readmission provide strong support for the Alaska Bar Association's statement that there is a general presumption against readmission of disbarred attorneys.

12. *See, e.g., In re Butcher,* 322 Ark. 24, 907 S.W.2d 715, 717 (1995); *Florida Bar v. Clement,* 662 So.2d 690, 699 (Fla.1995).

13. *In re Costigan,* 541 Pa. 459, 664 A.2d 518, 520 (1995) (quoting *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986)).

14. *See In re Pier,* 561 N.W.2d 297, 299 (S.D. 1997).

15. *Id.* at 300 (quoting *In re Morrison,* 45 S.D. 123, 186 N.W. 556, 557 (1922)).

whether an applicant for reinstatement has sustained [his] burden must be resolved in favor of protecting the public interest by denying reinstatement."[16] Courts have long held that "[a] court should be slow to disbar, but it should be even slower to reinstate."[17] We agree with and adopt this approach.

Given that both the ABA and a large number of jurisdictions have acknowledged the existence of a presumption against reinstatement, it was proper for the board to assume such a presumption existed. Accordingly, we recognize the presumption against reinstatement of a disbarred attorney and take this into account in evaluating Wiederholt's case.

### b. *The standard for reinstatement*

The bar association argues on appeal that in order to prove that a petitioner has the proper qualifications to be reinstated to the practice of law, he or she must present " 'overwhelming' proof of reform coupled with 'exemplary' conduct."

The ABA states that "[i]n no event should a lawyer even be considered for readmission until at least five years after the effective date of disbarment."[18] After that time, the ABA recommends that a lawyer seeking readmission "show by clear and convincing evidence" the following: "rehabilitation, compliance with all applicable discipline or disability orders or rules, and fitness to practice law."[19]

This high level of scrutiny is not unusual; most jurisdictions impose very high standards on those petitioning for reinstatement. The major consideration in reinstatement proceedings is whether the disbarred attorney has shown that those weaknesses that produced the earlier misconduct have been corrected.[20] Therefore, courts often consider remorse, rehabilitation, and moral fitness to practice law to be key elements in the inquiry.[21] Because a petitioner for reinstatement must demonstrate moral fitness and good character sufficient to be trusted again, the petitioner must make a showing of these characteristics that "overcome[s] the court's former adverse judgment" on the petitioner's character.[22] Accordingly, other jurisdictions have stated that petitioners for reinstatement should be held to an even higher standard of conduct than first-time applicants because they have already demonstrated that they are at risk for unethical conduct.[23] The majority position among courts is that the more culpable the conduct, the greater the burden for proving one is entitled to reinstatement.[24]

### c. *The test for reinstatement*

■ Most jurisdictions, including Alaska, have standards for reinstatement that are similar to the ABA guidelines.[25] Many jurisdictions have further developed fact-intensive, multi-part tests for determining whether a petitioner meets these standards.[26] The

---

**16.** *In re Griffith,* 323 Or. 99, 913 P.2d 695, 699 (1996).

**17.** *Morrison,* 186 N.W. at 557.

**18.** ABA Standards, Standard 2.10 (Readmission and Reinstatement).

**19.** *Id.*

**20.** *See, e.g., Griffith,* 913 P.2d at 699; *In re Stroh,* 108 Wash.2d 410, 739 P.2d 690, 693 (1987); *see also Greene v. Kentucky Bar Assoc.,* 904 S.W.2d 233, 236 (Ky.1995) ("The ultimate and decisive question is whether the applicant is now of good moral character and is a fit and proper person to be reentrusted with the confidence and privilege of being an attorney at law.")

**21.** *See, e.g., In re Jahn,* 559 So.2d 1089, 1090 (Fla.1990); *In re Reed,* 258 Ga. 271, 368 S.E.2d 499, 500 (1988).

**22.** *Pier,* 561 N.W.2d at 300 (quoting *In re Egan,* 38 S.D. 458, 161 N.W. 1003, 1006 (1917)).

**23.** *See, e.g., In re Nevill,* 39 Cal.3d 729, 217 Cal.Rptr. 841, 704 P.2d 1332, 1338 (1985); *Baldridge v. Kentucky Bar Assoc.,* 980 S.W.2d 558, 560 (Ky.1998); *Pier,* 561 N.W.2d at 300.

**24.** *See Pier,* 561 N.W.2d at 300.

**25.** *See, e.g.,* Alaska Bar R. 29; *Griffith,* 913 P.2d at 699; *In re Verlin,* 731 A.2d 600, 602 (Pa.1999); *Stroh,* 739 P.2d at 693.

**26.** *See, e.g., In re Robbins,* 172 Ariz. 255, 836 P.2d 965, 966 (1992); *In re Jamison,* 726 A.2d 690, 690 (D.C.App.1999); *In re Polito,* 132 Ill.2d 294, 138 Ill.Dec. 298, 547 N.E.2d 465, 468 (1989); *In re Pool,* 401 Mass. 460, 517 N.E.2d 444, 447 (1988); *In re Bradley,* 897 P.2d 243, 244 (Okla.1993); *Stroh,* 739 P.2d at 693.

factors most commonly taken into account include (1) the petitioner's present moral fitness; (2) the petitioner's acceptance of wrongdoing with sincerity and honesty; (3) the extent of the petitioner's rehabilitation; (4) the nature and seriousness of the original misconduct; (5) the petitioner's conduct following the discipline; (6) the time elapsed since the original discipline; (7) the petitioner's character, maturity, and experience at the time of discipline and at present; (8) the petitioner's current competency and qualifications to practice law; (9) restitution; and (10) the proof that the petitioner's return to the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.[27]

### 2. The standard for reinstatement under the Alaska Bar Rules

#### a. The requirements of Rule 29

Alaska Bar Rule 29 sets out the standard a disbarred attorney seeking reinstatement must satisfy:

> [T]he Petitioner will have the burden of demonstrating that (s)he has the moral qualifications, competency, and knowledge of law required for admission to the practice of law in this State and that his or her resumption of the practice of law in ... the State will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest .... [28]

Thus, an individual seeking reinstatement has the burden of demonstrating two things: (1) that he or she has the knowledge of law,

competency, and moral qualifications requisite to the practice of law in this state; and (2) that his or her reinstatement will not be detrimental to the Alaska Bar, the administration of justice, or the public interest.

Alaska has no other bar rules addressing the question of reinstatement by a disbarred attorney. There are also no Alaska cases that interpret this language. We conclude that the ten factors distilled in *Pier* and listed previously[29] provide useful guidance in a reinstatement inquiry.

#### b. "Clear and convincing evidence" is the proper standard for the Rule 29(c) criteria for reinstatement.

In making their determinations regarding Wiederholt, the Area Hearing Committee and the Disciplinary Board stated that an individual seeking reinstatement must prove that he or she meets the requirements set out in Rule 29(c)(1) by "clear and convincing evidence." A review of the ABA standards and cases from other jurisdictions suggests that the "clear and convincing evidence" standard is the proper standard of proof in reinstatement cases.

In its Standards, the ABA states that a lawyer seeking reinstatement or readmission must demonstrate rehabilitation, compliance with all applicable rules and discipline orders, and fitness to practice law "by clear and convincing evidence."[30] Other jurisdictions have concurred, establishing "clear and convincing evidence" as the standard of proof that petitioners seeking reinstatement must satisfy.[31] The reasoning of the Illinois Supreme Court is persuasive:

---

27. *See Pier,* 561 N.W.2d at 300 (listing a large number of cases from other jurisdictions and summarizing the requirements they have set out for reinstatement). A number of jurisdictions have adopted tests for reinstatement that incorporate the requirements set out in Bar Rule 29 (competency, knowledge, moral fitness) as well as one or more of the above requirements. *See id.*

28. Alaska Bar R. 29(c)(1). Neither party disputes that Rule 29 is the appropriate standard that Wiederholt must satisfy for reinstatement.

29. *See supra* text accompanying note 27. *See also Pier,* 561 N.W.2d at 300.

30. ABA Standards, Standards 2.2 (Disbarment), 2.10 (Readmission and Reinstatement).

31. *See, e.g., In re Clyman,* 713 A.2d 313, 315 (D.C.App.1998); *In re Spence,* 271 Ga. 630, 523 S.E.2d 323, 324 (1999); *In re Parker,* 149 Ill.2d 222, 172 Ill.Dec. 188, 595 N.E.2d 549, 554 (1992); *In re Clinton,* 338 Md. 481, 659 A.2d 875, 876 (1995); *In re Montgomery,* 566 N.W.2d 426, 428 (N.D.1997); *In re Greenberg,* 561 Pa. 154, 749 A.2d 434, 436 (2000); *Pier,* 561 N.W.2d at 300; *Stroh,* 739 P.2d at 693; *In re Hetzel,* 118 Wis.2d 257, 346 N.W.2d 782, 787 (1984).

In several states, the bar rule concerning reinstatement explicitly provides for a clear and convincing evidence standard. *See In re Feldman,*

The purposes underlying both attorney disciplinary and reinstatement proceedings are to safeguard the public, maintain the integrity of the profession, and to protect the administration of justice from reproach. Consistent with those purposes is the principle that when a disbarred attorney petitions for reinstatement that person has the burden of introducing clear and convincing evidence of rehabilitation.[32] We agree with this conclusion and adopt the clear and convincing evidence standard for proving the Rule 29(c)(1) requirements.

3. *The board did not consider impermissible factors in making its determination in this case.*

 In the present case, the board considered the factors explicitly listed in Rule 29: competency, knowledge, moral fitness, and whether Wiederholt's resumption of the practice of law in the state will be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest.

The board determined that Wiederholt had satisfied his burden of demonstrating that he met the competency and knowledge elements of the Rule 29(c) inquiry.[33] However, the board ruled that Wiederholt had not met his Rule 29 burden of demonstrating (1) that he was morally fit and (2) that his resumption of practice would not be detrimental to the bar, justice, or the public interest.

While Rule 29 establishes moral fitness and lack of detrimental impact as the requirements for reinstatement, it does not explicitly state what factors the board may take into account in determining whether a petitioner has satisfied these requirements. In making its determination in Wiederholt's case on both moral fitness and the potential detrimental impact of Wiederholt's return to practice, the board specifically considered, among other things, Wiederholt's past conduct, his level of remorse and acknowledgment of past wrongdoing, and the amount of time that has passed since his disbarment.

Wiederholt argues that the board's consideration of these three factors fails to show present unfitness. We disagree. Wiederholt's past conduct, his level of remorse and acknowledgment of past wrongdoing, and the amount of time that has passed since his disbarment are all highly relevant. Moreover, a survey of reinstatement cases in other jurisdictions with reinstatement rules similar to Rule 29 indicates that the board acted properly in its inquiry by considering Wiederholt's past conduct, his level of remorse, and the length of time that has passed since his disbarment. Each of these issues is discussed in greater detail below.

a. *Consideration of a petitioner's past conduct is appropriate.*

Wiederholt argues that a petitioner has satisfied his Rule 29 standard of proof if he or she can demonstrate that he or she has the moral qualifications, competency, and appropriate knowledge of law at the time he or she is petitioning for reinstatement. Therefore, Wiederholt contends that it is inappropriate for the Disciplinary Board to consider the petitioner's past moral unfitness, incompetency, or lack of knowledge when making a reinstatement decision. The bar association disagrees, believing that a petitioner's past conduct has a great deal of bearing upon his or her present fitness to practice law.[34]

A petitioner must demonstrate that he or she "has" the requisite moral qualifications, competency, and knowledge to practice law in Alaska.[35] Wiederholt points to the use of the present tense of the verb and suggests

252 A.D.2d 733, 675 N.Y.S.2d 675, 675 (1998); *In re Katz*, 907 P.2d 1029, 1031 (Okla.1995); *In re Griffith*, 323 Or. 99, 913 P.2d 695, 699 (1996); *In re Peotrowski*, 706 A.2d 1315, 1316 (R.I.1998); *Murphy v. Board of Prof'l Responsibility*, 924 S.W.2d 643, 644 (Tenn.1996).

**32.** *In re Rothenberg*, 108 Ill.2d 313, 91 Ill.Dec. 730, 484 N.E.2d 289, 293 (1985) (citations omitted).

**33.** Accordingly, these issues are not in dispute and will not be considered here.

**34.** In making its determination on Wiederholt's petition, the Hearing Committee rejected Wiederholt's request to "disregard his original misconduct and focus on his present qualifications to practice."

**35.** *See* Alaska Bar R. 29(c)(1).

that the board should be determining whether a petitioner "has" the requisite qualifications as of the present time (when the petition is being reviewed) rather than looking back to and considering the petitioner's earlier conduct. Wiederholt's argument is unpersuasive. It makes little sense to consider a disbarred attorney's petition for reinstatement entirely in a vacuum, ignoring the conduct and attitude that led to disbarment. Rather, the bar association's argument that "[d]isbarment conclusively proves lack of moral fitness" at the time of disbarment and "remains as evidence of lack of moral fitness later" is supported by the decisions of courts in other jurisdictions that have explicitly acknowledged that the conduct that led to the petitioner's disbarment is an important factor to consider when determining whether the petitioner should be reinstated.[36]

Courts addressing this issue cover a broad spectrum. At one extreme, the Supreme Court of Pennsylvania goes so far as to begin its reinstatement inquiry by examining past conduct and, if it is sufficiently egregious, barring reinstatement altogether without looking at subsequent events.[37] At the other end of the spectrum, the Supreme Court of Mississippi apparently looks only to the petitioner's present "firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed."[38] But most courts take an intermediate approach.

When most courts examine prior conduct, they tend to balance the evidence of the petitioner's current good character with the seriousness of the prior misconduct, inquiring whether the former is of sufficient weight

to overcome the latter.[39] For example, the District of Columbia Court of Appeals has devised a five-part test a petitioner must satisfy in order to be reinstated. This comprehensive test takes into account the petitioner's past and present conduct, qualifications, and attitude. It looks at the following factors:

(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent new ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.[40]

We agree with the intermediate approach taken by the majority of courts, and we conclude that a petitioner's past conduct plays an important role in determining whether the petitioner has been rehabilitated. We therefore hold that it is appropriate to consider a petitioner's past conduct in a reinstatement proceeding.

b. *Consideration of a petitioner's acknowledgment of and/or level of remorse for prior actions is appropriate.*

One of the reasons the bar association gives for the board's refusal to reinstate Wiederholt is his "failure to acknowledge his wrongdoing or show remorse." Courts in numerous jurisdictions with reinstatement rules similar to Alaska's have found a petitioner's remorse and consciousness of prior wrongdoing to be persuasive factors in determining whether a petitioner currently has

---

36. *See, e.g., In re Gutman*, 599 N.E.2d 604, 608 (Ind.1992); *Parker*, 172 Ill.Dec. 188, 595 N.E.2d at 554–55; *Greene v. Kentucky Bar Assoc.*, 904 S.W.2d 233, 235 (Ky.1995); *In re Pool*, 401 Mass. 460, 517 N.E.2d 444, 447 (1988) (stating that disbarment conclusively proves moral unfitness and remains as evidence of lack of moral fitness later); *Montgomery*, 566 N.W.2d at 429–30 (holding that conduct leading to disbarment has "great bearing" on whether petitioner has honesty and integrity necessary for reinstatement); *Katz*, 907 P.2d at 1031; *Griffith*, 913 P.2d at 699.

37. *In re Greenberg*, 561 Pa. 154, 749 A.2d 434, 435–36 (2000).

38. *Phillips v. Mississippi State Bar*, 427 So.2d 1380, 1382 (Miss.1983) (quoting *Ex parte Marshall*, 165 Miss. 523, 147 So. 791, 798 (1933)).

39. *See Greene*, 904 S.W.2d at 235 (stating that conduct leading to disbarment is a factor in the reinstatement inquiry, but not the most significant); *Montgomery*, 566 N.W.2d at 429; *Katz*, 907 P.2d at 1031.

40. *In re Jamison*, 726 A.2d 690, 690 (D.C.App. 1999) (citing *In re Roundtree*, 503 A.2d 1215, 1217 (D.C.App.1985)).

the level of moral and ethical character required for reinstatement.[41]

As discussed above, a primary concern of the reinstatement process is whether the petitioner has been rehabilitated and whether he has presented sufficient evidence to demonstrate that those weaknesses that produced the earlier misconduct have been corrected.[42] Because the petitioner's remorse and acknowledgment of prior wrongdoing are vital to this determination, we hold that this factor is appropriate to consider in a reinstatement decision.

#### c. The board may take into account the amount of time that has passed since disbarment.

In making its determination in Wiederholt's case, the board explicitly took into account the relatively short amount of time that had passed since his disbarment. It noted that Wiederholt had petitioned for reinstatement "at the earliest possible moment of eligibility" and had filed his petition for reinstatement "several weeks before the mandatory term of his disbarment expired." It was not error to consider this factor.

Other jurisdictions have considered the length of time an attorney has been disbarred in conjunction with his or her past acts when determining whether reinstatement should occur.[43] The Rhode Island Supreme Court has stated that "[w]hen an attorney has engaged in repeated acts or a calculated series of acts designed to corrupt the administration of justice, the showing of present fitness may require a lengthier period of rehabilitation."[44] We agree with that assessment and conclude that this factor is applicable in this case and was properly considered.

#### B. Wiederholt Did Not Satisfy the Requirements for Reinstatement Set Out in Alaska Bar Rule 29.

 The board denied Wiederholt's petition for reinstatement on the grounds that he failed to demonstrate by clear and convincing evidence two essential elements of the Rule 29(c) criteria for reinstatement: (1) "that he currently possesses the moral qualifications to qualify for reinstatement" and (2) "that his resumption of the practice of law at this time would not be detrimental to the integrity and standing of the Bar or the administration of justice or subversive of the public interest."

Wiederholt argues that the evidence in the record supports the conclusion that he is morally fit to practice law. He further states that "[g]iven the weight of favorable evidence, the absence of any opposing witness, and the favorable recommendation of the Bar's only witness," the Hearing Committee's report does not offer any "rational basis" supporting its decision. We disagree.

Although the record indicates that Wiederholt has made some changes since his disbarment, he did not satisfy his burden of proving the above elements of Rule 29(c) by clear and convincing evidence. Moreover, the Hearing Committee's report cogently sets out the rationale behind its result, and its findings and conclusions of law are amply supported by the record.

#### 1. Wiederholt's testimony and evidence did not prove that he has the requisite moral character for reinstatement.

Wiederholt contends that he has presented the testimony of a large number of witnesses confirming "his worthy character or his moral fitness," including "[d]istinguished members of the Bar, a former Supreme Court justice, and other lay witnesses." Wiederholt further contends that the Hearing Com-

---

41. *See, e.g., Florida Bd. of Bar Examiners re J.J.T.,* 761 So.2d 1094, 1097 (Fla.2000); *Parker,* 172 Ill.Dec. 188, 595 N.E.2d at 555; *Greene,* 904 S.W.2d at 235; *In re Bradley,* 897 P.2d 243, 244 (Okla.1993); *Griffith,* 913 P.2d at 701; *In re Verlin,* 557 Pa. 47, 731 A.2d 600, 603 (1999); *In re Costigan,* 541 Pa. 459, 664 A.2d 518, 522 (1995); *In re Peotrowski,* 706 A.2d 1315, 1317 (R.I.1998); *In re Stroh,* 108 Wash.2d 410, 739 P.2d 690, 694 (1987).

42. *See supra* note 20 and accompanying text.

43. *See, e.g., Verlin,* 731 A.2d at 602; *Stroh,* 739 P.2d at 695; *see also In re Jahn,* 559 So.2d at 1089, 1090 (Fla.1990).

44. *Peotrowski,* 706 A.2d at 1316 (citing *In re Romano,* 615 A.2d 476, 477 (R.I.1992)).

mittee and Disciplinary Board disregarded this testimony and found Wiederholt to be "morally deficient" based only upon Wiederholt's "regard for the facts of his disbarment almost six years ago." This characterization is inaccurate.

### a. Wiederholt's past conduct

The bar association notes that Wiederholt's past conduct provides strong evidence that he lacks the moral fitness to be readmitted to the Alaska Bar. As discussed, Wiederholt's past conduct is a permissible factor for the board to take into account because the conduct leading up to disbarment is relevant in assessing an applicant's moral fitness.

The record does support the bar association's argument—Wiederholt's misconduct was indeed serious. As this court's opinion and the attached appendices in his disbarment case indicate, Wiederholt engaged in numerous and repeated instances of misconduct over a span of four years, including committing criminal forgery, assaulting opposing counsel, engaging in abusive discovery tactics, using threatening language towards opposing counsel, and writing a threatening letter to an unrepresented claimant on behalf of a client.[45] All of these, taken together, demonstrate a pattern of serious misconduct and therefore provide some evidence that Wiederholt lacks the requisite moral fitness to be readmitted to the practice of law in Alaska.

### b. Wiederholt's lack of remorse

Wiederholt's testimony and evidence presented at the hearing did not demonstrate by clear and convincing evidence that he recognized the seriousness of his past conduct.

The bar association contends that Wiederholt's testimony at the hearing provided strong evidence that his moral character has not reformed from his pre-disbarment days. In support of its position, the bar association argues that Wiederholt has failed to show remorse for his actions and has not acknowledged his previous wrongdoing, which he attempts to pass off as a misunderstanding of definitions. Wiederholt claims that the

board's findings are "flatly unsupported by the record" and that he has "acknowledged his personal responsibility for the disbarment." In support of his position he quotes extensively from the transcript; however, Wiederholt's quotations are selective and he leaves out considerable portions of his testimony that indicate the opposite.

An examination of the full record supports the bar association's contentions. The transcript of Wiederholt's testimony is replete with examples demonstrating that he has little remorse for his previous actions and has no consciousness or understanding of the nature or extent of his past wrongdoing.

During his testimony, Wiederholt continued to maintain that his past conduct did not warrant disbarment and that the board and this court wrongly decided at least some of the charges against him, including the *Nesbett* grievance, in which he was disciplined for deceiving the court about whether a client's judgment had been satisfied. Wiederholt stated that he did not believe that he acted unethically and that he simply believed the board and this court defined unethical conduct differently than he did. Rather than stating that he has acknowledged his past mistakes and will change in the future, he simply stated to the panel that "I accept full responsibility for the conclusions that the committee and the supreme court ultimately reached.... [W]hile I believed that my conduct did not warrant disbarment, it is the conclusion that the Bar rightfully or wrongfully reached." He further stated that he "deeply regret[s] the findings that the court came to"—not that he regretted his actions—and reemphasized that he "had a different understanding of what happened."

Even when he did acknowledge that he behaved in an unethical, unprofessional manner, Wiederholt still attempted to defend his actions. At the hearing, Wiederholt admitted that his act of kicking opposing counsel Dennis Maloney was "stupid," "unethical," and "wrong." However, he then went on to minimize and justify his actions by stating that Maloney was bigger and heavier than he was and that Maloney had started the inci-

---

**45.** *See In re Wiederholt*, 877 P.2d 765, 766–77 (Alaska 1994).

dent. He also insinuated that Maloney deserved what he received.

The board found the fact that Wiederholt did not apologize to several of his victims to be a significant indicator of his lack of remorse for his previous actions, and consequently, a lack of understanding of his prior wrongdoing. The record supports this conclusion: Wiederholt did not apologize or make any restitution to at least three of his former victims.

Also significant to the board was Wiederholt's insulting and abusive attitude towards others. This trait was manifested by Wiederholt, and through counsel, in belittling a disbarred lawyer who allegedly works as a hotel doorman, and criticizing a judge and bar counsel for mistreating him.

### c. *Wiederholt's failure to take remedial measures previously recommended by the board and this court*

During Wiederholt's disbarment proceedings in 1993, the board had recommended that Wiederholt seek counseling from a mental health professional. Wiederholt has not done so.

Wiederholt contends that he has sought counseling from his pastor, Reverend George Gilchrist, and that this counseling discounts the conclusion that he did not secure help from a mental health professional. Once again, the record does not support Wiederholt's contention. Reverend Gilchrist's testimony at the hearing revealed that any counseling of Wiederholt was very informal, with the majority of the contacts taking place in the parking lot or while skiing and cycling, and occurring only seven to eight times per year. His testimony also revealed that Wiederholt had sought such counseling prior to disbarment and that Wiederholt's frequency of encounters remained the same after his disbarment.

The fact that Wiederholt did not take the board's recommendation and seek professional counseling is strong evidence of his disregard of the import of the Disciplinary Board's suggestions, as well as his failure to recognize the nature and extent of his wrongdoing.

### d. *Wiederholt's witnesses*

Wiederholt argues that the board erroneously disregarded the testimony of his witnesses, all of whom testified favorably and put their professional reputations behind him. The bar association concedes that much of the testimony of Wiederholt's witnesses is favorable; however, it states that this evidence was not strong enough to overcome the presumption against reinstatement.

 The board concluded that the weight of the witnesses' testimony was insufficient to satisfy Wiederholt's high burden of proof for a number of reasons. Although his witnesses testified favorably about him in other areas, they did not have sufficient information about his moral qualifications. For example, while Wiederholt's employers were able to address his legal competency and his pastor testified to his ability to handle daily problems, they had virtually no knowledge of how he conducted himself in the practice of law or the events that led to his disbarment. Similarly, the testimony of his friends, though conveying favorable character judgments, did not reveal knowledge of the events leading to his disbarment. Consequently, the board concluded that Wiederholt's witnesses could not adequately evaluate whether Wiederholt truly had reformed.

 For these reasons the board did not err by discounting the testimony of Wiederholt's witnesses on the subject of moral fitness. Most jurisdictions attach considerable significance to the fact that a petitioner's witnesses do not know about the petitioner's wrongdoing and merely comment that the petitioner has moral character at the present time.[46] For example, the Oregon Supreme Court has emphasized that such statements are "not determinative of the question of whether [the] applicant is likely to repeat his

---

46. *See, e.g., J.J.T.,* 761 So.2d at 1097; *Griffith,* 913 P.2d at 700 (suggesting that it is insufficient for witnesses to say that a petitioner simply "has" moral character because such statements do not provide evidence of reformation); *Lawyer Disciplinary Bd. v. Sayre,* 207 W.Va. 654, 535 S.E.2d 719, 721 (2000).

misconduct."[47] Courts have also suggested that witnesses should relate specific facts or instances that form the basis of their opinions.[48] We agree.

■ While the psychiatrists testifying at the hearing both stated that Wiederholt has made significant strides in his emotional development, the board found that this improvement did not necessarily indicate that Wiederholt was morally fit to practice law or that he could handle the stresses of being a lawyer if permitted to resume that position. While we recognize that Wiederholt has made some improvement emotionally, we agree with the board's conclusion regarding the impact of the stresses of the practice of law.

First, because the doctors had evaluated Wiederholt in his present work situation, where he is supervised by other lawyers and shielded from the pressures of law practice, their testimony provided no indication that Wiederholt could withstand the pressures of being a lawyer, especially a solo practitioner. Second, at the time of disbarment, psychiatrist Dr. Aaron Wolf testified that Wiederholt's dishonest acts could not be completely explained by psychological insights, and the Hearing Committee concluded that Wiederholt's actions "seem[ed] unrelated to his personality disorder." Therefore, an improvement in Wiederholt's psychiatric situation, without more, does not indicate that the circumstances that led to his disbarment would not happen again. Finally, Wiederholt did not seek counseling from a mental health professional and instead opted to continue to receive informal emotional counseling from his pastor. As discussed above, given the nature of these counseling sessions, the board did not err in concluding that they had little effect in reforming Wiederholt's moral character.

■ Wiederholt contends that the board erred in ruling against him on the moral fitness issue because the bar association did not present one witness to support its contention that he lacked the moral qualifications to practice law. But the bar association is not required to present witnesses to make out its case.[49] The burden of proving by clear and convincing evidence that the standards of Rule 29 are met falls on the petitioner.

### e. Conclusion

The record supports the board's conclusion that Wiederholt has not proven his moral fitness by clear and convincing evidence. Wiederholt's testimony, in which he blames this court and the Alaska Bar Association for his problems and attempts to justify and minimize his actions, shows that he fails to understand the extent and significance of his previous misconduct. His refusal to seek psychiatric assistance as suggested by the board in the 1993 proceeding demonstrates his reluctance to comply with the demands of the Disciplinary Board. Finally, the testimony of his witnesses, though favorable in some respects, is insufficient to satisfy his burden of proving by clear and convincing evidence that he is morally fit to practice law.

2. *Wiederholt did not prove by clear and convincing evidence that his reinstatement will not be detrimental to the integrity and standing of the bar, the administration of justice, or subversive to the public interest.*

■ The board also concluded that Wiederholt did not meet his burden of proving by clear and convincing evidence that his reinstatement will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest.

As discussed, the board correctly found that Wiederholt did not meet his burden of proving by clear and convincing evidence that he is morally fit to practice law. Many of those same issues and concerns are pertinent to the issue of the integrity of the profession and public protection. And the

---

47. *Griffith,* 913 P.2d at 700.

48. *See, e.g., Murphy v. Board of Prof'l Responsibility,* 924 S.W.2d 643, 647 (Tenn.1996); *Sayre,* 535 S.E.2d at 721.

49. *See, e.g., In re Greenberg,* 561 Pa. 154, 749 A.2d 434, 436 (2000).

board's conclusions are again amply supported by the record.

First, the board found that serious questions existed concerning Wiederholt's possibility of causing harm in the future despite his showing that he "is more mature and mentally stable today than a few years ago." The board noted that Wiederholt's most serious instances of misconduct did not arise from inexperience, ignorance, or psychiatric problems and were instead "knowing and intentional acts of misconduct" performed with "the conscious purpose of achieving wrongful objectives."

Second, the board found that Wiederholt's lack of remorse, lack of consciousness concerning his past wrongdoing, failure to accept responsibility for his actions, and his tendency to justify and minimize his past behavior provide strong evidence that he could again engage in similar behavior in the future.

Third, the presentation of Wiederholt's case at the hearing, which included belittling another disbarred lawyer, and accusing bar counsel of soliciting grievances against him, also indicated that Wiederholt had not abandoned the lack of respect for the system and abusive litigation tactics that had led in part to his disbarment.

Fourth, the board further found that Wiederholt has made no showing that he will be able to function unsupervised in the stress-filled practice of law since the testimony of the psychiatrists at the hearing was based on observations of him in the highly supervised, lower stress employment he had as a paralegal.

Finally, the board found that Wiederholt's witnesses' lack of knowledge about the events that led to his disbarment suggested that his witnesses could not provide informed insight into whether Wiederholt truly had reformed.

 Again, Wiederholt's argument that the board did not present any evidence or witnesses to back up its position is inapposite; the burden of proving that his reinstatement will not be detrimental falls on Wiederholt, not the board.[50]

Because the record supports the board's conclusion that Wiederholt did not prove by clear and convincing evidence that his reinstatement will not be detrimental to the integrity of the bar or the public at large, we uphold its decision on this issue.

### C. *The Disciplinary Board's Time Requirements under Alaska Bar Rule 29 Are Directory, Not Mandatory.*

 Wiederholt contends that despite his timely compliance with the requirements of Rule 29, the Hearing Committee and the Disciplinary Board did not abide by the time limits imposed by the rule. Wiederholt is partially correct; the Hearing Committee did not meet its time requirements. However, because we conclude that these time limits are directory, as discussed in greater detail below, Wiederholt is not entitled to any relief for the Hearing Committee's noncompliance.

Alaska Bar Rule 29 states that upon the receipt of a reinstatement petition, the Hearing Committee "will promptly schedule a hearing to take place within 30 days of the filing of the petition."[51] After the conclusion of the hearing, the Hearing Committee has thirty days within which it "will issue a report setting forth its findings of fact, conclusions of law, and recommendation."[52] Finally, "within 45 days of its receipt of the Hearing Committee's report, the [Disciplinary] Board will review the report and the record; the Board will file its findings of fact, conclusions of law, and recommendation with the Court, together with the record and the Hearing Committee report."[53] Rule 29 does not specify any remedy for noncompliance with the timing provisions.

The Hearing Committee met neither of its thirty-day deadlines. First, it did not schedule a hearing to take place within thirty days of the filing of Wiederholt's petition. Wiederholt filed his petition for reinstatement on June 23, 1999. The hearing on his petition

---

**50.** *See id.*

**51.** Alaska Bar R. 29(c)(1).

**52.** *Id.*

**53.** Alaska Bar R. 29(c)(2).

was initially scheduled for August 31, 1999; he was notified of this fact on August 2. Second, the Hearing Committee did not meet the requirement of providing its rulings and findings within thirty days of the hearing. Wiederholt's hearing was held on September 10, 1999. Both parties submitted additional briefing and closing arguments by October 8. The Hearing Committee did not file its findings of fact and rulings of law until February 3, 2000.

On the other hand, the Disciplinary Board did act within the forty-five day period provided in Rule 29(c). The Board received the Hearing Committee report on February 3 and filed its report on March 10.

 Whether the Hearing Committee's failure to adhere to the time limits specified in Rule 29 entitles Wiederholt to any relief turns on whether the timing provisions are mandatory or merely directory. We have previously stated that if a rule or regulation "is mandatory, strict compliance is required." [54] However, "if it is directory, substantial compliance is sufficient absent significant prejudice to the other party." [55] A rule is directory rather than mandatory if (1) its wording is affirmative rather than prohibitive; (2) the legislative intent was to create "guidelines for the orderly conduct of public business"; and (3) serious, practical consequences would follow from a finding that it is mandatory.[56] In a recent case, we held that the statutory requirement that an order on a hearing "shall" be made within thirty days was directory: [57]

> "[S]hall" is a word of command; however, in the absence of injury to the defendant and in the absence of a penalty for failure to comply with the statute, "shall" denotes simple futurity rather than a command.[58]

We conclude that the time provisions of Rule 29 are directory. First, the wording of Rule 29's time limits is affirmative. The rule states that the Hearing Committee "will" act within the specified time period; it does not prohibit it from doing otherwise. Second, it appears that the primary purpose of the time limits is merely to provide a broad set of guidelines for how the Hearing Committee and Disciplinary Board should proceed. Third, a finding that this rule is mandatory would lead to serious, practical consequences. Imposing a strict thirty- or forty-five-day time limit on the actions of the Hearing Committee and Disciplinary Board would fail to take into account the many common exigencies and contingencies of litigation. For example, in the present case, Wiederholt's hearing was delayed by the scheduling of a pre-hearing conference, Wiederholt's motion to strike the bar association's designation of record, and the bar association's request for extra time so that the parties would have adequate time to evaluate the report of psychiatric expert Dr. Aaron Wolf. All of these events are commonplace in litigation. Imposing a strict time limit would clearly inhibit the discretion of the Hearing Committee to make adjustments for these or other similar events. In addition, it is ultimately beneficial to petitioners to have a scheme where the Hearing Committee or Disciplinary Board is not bound by strict time constraints because the Committee and Board have greater latitude to approve continuances if the petitioner needs more time for any reason.

Furthermore, this court and others have suggested that "time limits for the issuance of findings of fact are directory and not mandatory, and that the mere lapse of time is not enough to require reversal." [59] Because we conclude that the time limits imposed by Rule 29 are directory, the Hearing

---

**54.** *Copper River Sch. Dist. v. State,* 702 P.2d 625, 627 (Alaska 1985).

**55.** *Id.*

**56.** *City of Yakutat v. Ryman,* 654 P.2d 785, 789–91 (Alaska 1982).

**57.** *See State, Dep't of Commerce and Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 357 (Alaska 2000).

**58.** *Id.* (quoting *Commissioner of Ins. v. Stryker,* 218 Ga.App. 716, 463 S.E.2d 163, 166 (1995)).

**59.** *Oaksmith v. Brusich,* 774 P.2d 191, 201–02 (Alaska 1989); *see Hughes v. Nashua Mfg. Co.,* 257 Cal.App.2d 778, 65 Cal.Rptr. 380, 385 (1968); *Hoppin v. Lang,* 74 Mont. 558, 241 P. 636, 644 (1925).

Committee's failure to abide by them does not entitle Wiederholt to any relief unless he was substantially prejudiced by the delay.[60] The record indicates that he was not. The delay did not impinge on any of Wiederholt's rights—he was already disbarred and unable to practice law—and did not affect the resolution of the case.

In addition, the Hearing Committee did not act unreasonably. First, the Hearing Committee acted promptly once it was assigned Wiederholt's petition on June 30, 1999. Once the Hearing Committee had notice of the case, it did notify Wiederholt on July 20 that it had scheduled a pre-hearing conference for his case on July 28. Both of these dates do fall within a reasonable period after Wiederholt filed his petition. The result of the pre-hearing conference was a scheduling order, issued on August 2, that specified all of the deadlines for filing motions and witness lists in the case and set a hearing date of August 31. A notice of formal hearing was sent to Wiederholt on August 9. Second, Wiederholt himself slowed down the process by filing a motion to strike the bar association's designation of record for his reinstatement hearing on August 16.[61] Third, although the bar association did in fact file a request for a second pre-hearing conference to determine a new hearing date on August 19, the purpose of this request was to aid both itself and Wiederholt in better preparing their cases. This request sought to delay the hearing so that the parties would have adequate time to review the written psychiatric evaluation of Wiederholt prepared by Dr. Aaron Wolf. Because Dr. Wolf was meeting with Wiederholt on August 24 (a date agreed upon by Wiederholt) and could not complete his written report until August 31, the date of the hearing, the bar association argued that all of the parties needed extra time to address any questions raised by the report and to determine whether Dr. Wolf would be called as a witness.

We do note, however, that there was an unexplained delay in the issuance of the Hearing Committee's rulings and findings. Wiederholt's reinstatement proceedings concluded on October 8, 1999, yet the Hearing Committee did not issue its report until February 2000. There is no information in the record to explain why the Hearing Committee took this long. And the Disciplinary Board requested, from this court, extra time to file its report because the Hearing Committee had not timely submitted its report. But we conclude that this delay did not prejudice Wiederholt.

The record does support Wiederholt's contention that the Hearing Committee did not abide by the time limits set out in Rule 29. But this provision is directory and Wiederholt was not substantially prejudiced by the delay. Accordingly, Wiederholt is entitled to no relief on this basis.

### D. *This Is Not the Forum to Create Bar Rules on Disbarment.*

#### 1. *Disbarment in Alaska is not permanent.*

The bar association asks this court to determine whether "some disbarment misconduct is so serious" that the individual can be permanently barred from reinstatement. It further contends that if this court determines that such conduct exists, it should determine whether Wiederholt's actions meet this standard. By asking this court to create a rule by which certain individuals can be forever barred from reinstatement, the bar association is suggesting a rule that states that permanent disbarment can exist in Alaska, at least under certain limited circumstances.

Disbarment in Alaska is not permanent. Alaska Bar Rule 29(b)(5) allows a lawyer who has been disbarred to apply for reinstatement five years from the effective date of the disbarment.[62] It is not appropriate for this court to make an *ad hoc* decision on this issue in the context of this case. Any rule amendment should take place pursuant to

---

60. *See Schnell,* 8 P.3d at 357; *Copper River Sch. Dist. v. State,* 702 P.2d 625, 627 (Alaska 1985).

61. The bar association filed an opposition to his motion that same day. Wiederholt then filed a

reply on August 18. This motion was denied on August 24.

62. *See* Alaska Bar R. 29(b)(5); *Buckalew,* 731 P.2d at 51 n. 8.

the standard practices for amending the rules.[63]

### 2. The Rules Do Not Specify a Waiting Period Before Wiederholt Can Reapply.

 The bar association contends that if this court denies Wiederholt's petition, "no rule prevents him from submitting a new application the next day." Consequently, the bar association asks for the designation of a waiting period before he can reapply for reinstatement in the event we decide that Wiederholt should not be reinstated.

The Alaska Bar Rules do not place any restrictions on an individual's ability to file a subsequent petition for reinstatement. The bar association may be correct in its assertion that "the imposition of a waiting period will prevent other applicants from 'practicing' reinstatement till they can say the right things." However, Wiederholt's appeal is not the proper forum to set a procedural rule that binds him and all other future petitioners seeking reinstatement under Rule 29.

The designation of a waiting period prior to reapplication for reinstatement is a matter that should be governed by rule. Therefore, if the bar association seeks to amend Rule 29 to include a waiting period, it has the power to commence the process by presenting this court with a suitable proposal.[64] It has not done so. We decline to act in these circumstances.

### V. CONCLUSION

Because the Disciplinary Board took all of the relevant factors into account and because the weight of the evidence supports the board's denial of Wiederholt's petition for reinstatement to the practice of law, we AFFIRM the decision not to reinstate Wiederholt.

BRYNER, Justice, not participating.

---

63. *See* Alaska Bar R. 62.

64. *See* Alaska Bar Rule 62.