**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Carroll SAMARA, Respondent.**

**SCBD No. 2830.**

Supreme Court of Oklahoma.

May 23, 1989.

K. Lynn Anderson, Gen. Counsel, and John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Carl Hughes, Oklahoma City, for respondent.

HODGES, Justice.

This is the third petition for reinstatement filed by the respondent, Carroll Samara (hereinafter "Mr. Samara"). See, *State ex rel. Oklahoma Bar Ass'n v. Samara*, 683 P.2d 979 (Okla.1984) and *State ex rel. Oklahoma Bar Ass'n v. Samara*, 725 P.2d 306 (Okla.1986). Mr. Samara was convicted on August 29, 1979 of a felony (making and subscribing a false tax return and attempting to evade and defeat income tax) and sentenced to three years imprison-

ment.[1] As a result of the conviction this Court temporarily suspended Mr. Samara from the practice of law [2] and after a show cause hearing amended the temporary suspension order to permit Mr. Samara to dispose of pending litigation.[3] Approximately one year later this Court issued an order vacating its prior order and absolutely suspending Mr. Samara from the practice of law finding that he had conducted new litigation during the time he had been suspended.[4]

After serving 9½ months of his three year sentence, Mr. Samara was released on August 13, 1982 under a suspended sentence to run until October 27, 1984. This Court then granted the complainant's motion for final order of discipline and issued a final order suspending Mr. Samara from the practice of law until October 27, 1984,[5] but allowing an application for reinstatement to be filed prior to October 27, 1984 if Mr. Samara were discharged from probation before that date. In accordance with this ruling Mr. Samara initially filed for reinstatement in March, 1983, following his dismissal from probation in January, 1983. The petition for reinstatement was denied in May of 1984 when an opinion issued finding that Mr. Samara had, on several occasions since he had been completely suspended from the practice of law in 1980, represented himself as an attorney to a state agency and claims adjustors. He had also appeared as attorney of record before a court of record in Oklahoma County. He was found to be advising clients as an attorney and corresponding on behalf of clients on stationery listing him as an "Attorney at Law." In addition, he had maintained his telephone directory listing as "Attorney" during 1981 and 1982. The

Court found all of these acts to constitute the active practice of law while Mr. Samara was suspended.[6]

In 1986, Mr. Samara's second petition for reinstatement was presented to the Professional Responsibility Tribunal which recommended granting the petition. The Court denied the petition finding that Mr. Samara had not presented proof sufficient to overcome the former adverse judgment.[7]

The third petition for reinstatement was filed in 1987, and a hearing took place in March, 1988 before the Professional Responsibility Tribunal which found that, despite the fact that no violations of unauthorized practice of law were found after August 1, 1986, the proof presented was insufficient "to overcome the Supreme Court's former judgment(s) adverse to the Applicant" and therefore, the panel recommended that Mr. Samara's third petition for reinstatement be denied. As the court of exclusive jurisdiction,[8] we have now reviewed the record and history of the case and find that the petition should be granted.

### I.

Rule 11.5 of the Rules Governing Disciplinary Proceedings sets out the necessary findings that must be made prior to the granting of reinstatement. Section (b) of the rule requires a finding as to "whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation."[9] Our prior opinions dealing with this particular applicant's reinstatement petitions have found that at various times since the original, conditional, temporary suspension in October, 1979, Mr. Samara

1. Case No. CR 79 15–D (W.D.Okla.).

2. Supreme Court Order, September 24, 1979, OBAD No. 563.

3. Supreme Court Order, October 9, 1979, OBAD No. 563.

4. Supreme Court Order, October 28, 1980, OBAD No. 563.

5. Supreme Court Order, November 4, 1982, SCBD No. 2830.

6. *State ex rel. Oklahoma Bar Ass'n v. Samara,* 683 P.2d 979 (Okla.1984).

7. *State ex rel. Oklahoma Bar Ass'n v. Samara,* 725 P.2d 306 (Okla.1986).

8. Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A.

9. 5 O.S.1981, Ch. 1, App. 1–A.

has engaged in the unauthorized practice of law. The majority of these violations occurred before May, 1984 when we denied the first petition for reinstatement. Due to these infractions, as well as Mr. Samara still being listed in the telephone directory as an "Attorney" and his use of letterhead showing his name followed by "Attorney at Law," we also denied his second reinstatement petition. While we recognize that the issue of suspension was precipitated by Mr. Samara's conviction of a felony dealing with income tax evasion, the end result of this conviction has been that Mr. Samara has not only served a prison sentence and been released on parole (which has now been discharged), he has been suspended from the practice of law for almost 10 years. We are also mindful of the fact that no complaint has been received as to Mr. Samara's legal work performed prior to the suspension. On the contrary he had a thriving general practice requiring long hours which he pursued enthusiastically.

Testimony was received from approximately fifty witnesses including attorneys, judges and clergymen, who testified as to Mr. Samara's integrity and competency and proffered the best interest of the public and bar would be served by his reinstatement to the practice of law. It appears from the testimony of these witnesses that Mr. Samara's former clientele were people who were unable to hire an attorney and that many of his clients were represented on a pro bono basis. As one judge testified, "he was in effect an extension of the Legal Aid Office."

It appears that the two areas of unauthorized practice Mr. Samara has most recently had difficulty complying with are the use of letterhead stationery (listing Mr. Samara as an "Attorney at Law") and a continuous listing in the telephone directory as "Attorney". While we have held these actions to constitute the unauthorized practice of law warranting suspension,[10] at the same time it is necessary to carefully look at the nature of the offenses and the circumstances under which the suspension was pronounced.[11]

In light of this we draw attention to the following facts: (1) The most recent opinion denying Mr. Samara's reinstatement is dated July 25, 1986; (2) In his Third Petition for Reinstatement Mr. Samara expressed deep regret and apologized for his conduct in the past; (3) Mr. Samara's listing as an attorney in the telephone book was dropped from the 1987–88 directory on August 21, 1986, and neither has he been listed as an attorney in the telephone directory of 1988–89; (4) The last letter written by Mr. Samara on his attorney letterhead was dated August 1, 1986 (7 days after the second denial of reinstatement) and signed "Carroll Samara for John R. Stacy." It is important to note that this letter was one of a series of letters on the same matter and that the recipient had been informed in 1983 that Mr. Samara was not practicing law but only acting as the corresponding secretary in the matter while his nephew, John Stacy, an attorney, handled the legal aspects of the case.

The foregoing facts plainly demonstrate that Mr. Samara has not in any manner whatsoever actively engaged in the practice of law since August 1, 1986. This Court believes that the character witnesses' testimony concerning Mr. Samara's love for the law, the fact that he has kept abreast of changes in the law that have occurred, Mr. Samara's own statements, the nature of the offense initially resulting in suspension, and the evidence of Mr. Samara's activities since August 1, 1986, all have established proof sufficient to overcome our previous adverse judgments. We therefore find that the reinstatement should be granted.

## II.

The issue of payment of costs incident to petitions for reinstatement was raised by the complainant. Under Rule 11.1(c) of the Rules for Disciplinary Proceedings,[12] an ap-

---

**10.** *State ex rel. Oklahoma Bar Ass'n v. Samara,* 683 P.2d at 984 (Okla.1984).

**11.** *Application of Sharpe,* 499 P.2d 406 (Okla. 1972).

**12.** 5 O.S.1981, Ch. 1, App. 1–A.

plicant petitioning for reinstatement "shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal." The complainant asserts that costs of this proceeding as well as unreimbursed costs of the proceeding in the second petition for reinstatement amount to $4889.21 and, as such, should be assessed against Mr. Samara. We find these costs to be reasonable and in compliance with the Rules Governing Disciplinary Proceedings and therefore grant the reinstatement of Mr. Samara conditioned upon his payment of these costs.

REINSTATEMENT GRANTED; COSTS ASSESSED.

LAVENDER, KAUGER and SUMMERS, JJ., and REIF, S.J., concur.

HARGRAVE, C.J., SIMMS and DOOLIN, JJ., and MEANS, S.J., dissent.

OPALA, V.C.J., and ALMA WILSON, J., disqualified.

DOOLIN, Justice, dissenting.

I believe it is clear from the evidence introduced in this matter that the respondent, Carroll Samara, has continued to practice law in the face of his suspensions. In accordance with the Oklahoma cases set out by the majority, I would therefore continue his suspension and would not reinstate him to the Roll of Attorneys.

### LISTING AS AN ATTORNEY

At the time of his original citation and suspension respondent affirmatively swore that he would completely refrain from the appearance of practicing law. The evidence in the instant case and in the previous disciplinary proceedings is to the contrary. Not only was a second citation necessary, but and not until after the effective date of the second citation did he discontinue listing himself in the telephone book as an attorney at law. Respondent does not challenge the fact that the Oklahoma Bar Association itself found it necessary to ad-

monish the publisher to cease listing him as an attorney at law. The act of the publisher also, we note, came after the second denial of reinstatement and at the intervention of the Oklahoma Bar Association.

### USE OF LETTERHEAD

An element in our denial of respondent's first and second reinstatement applications was his use of stationary bearing the letterhead "Carroll Samara, Attorney at Law."

Respondent's direct response to his use of the letterhead—as late as August 1, 1986, after the second denial of reinstatement—follows:

"Q. Mr. Samara, in your opinion do these letters written on your Attorney at Law letterhead show that your actions have complied with the promise that you made at that time at that hearing?

A. Sure. That is not practicing law to write a letter to someone on a letterhead. I'm not practicing law. I am not representing someone. That is practicing law. I can represent myself."

The evidence presented during the current application for reinstatement shows that the respondent's name had been blacked out but the stationary still carried the designation of "Attorney at Law". This hardly conforms to this original promise to "refrain from the appearance of any practice". Further when asked, "Do you still use that stationary?" respondent replied, "If I had any left I might."

Other evidence in his third application is unconvincing that he has severed all ties with a nephew lawyer. The evidence is subject to the interpretation that respondent still continues to practice law.

### CHARACTER WITNESSES

It is true that a great number of practicing lawyers, judges and clergymen gave evidence of respondent's character and proffered that the best interests of the Bar would be served by his reinstatement. None of these character witnesses dealt with the evidence, none testified as to the

public's interests in a regulated, ethical Bar.

While several witnesses go so far as to say he did a great deal of pro bono work, and one said that he was a one-man extension of legal aid, none expressed an opinion on the evidence.

At best the character witnesses advance an argument of **argumentum ab misericordia** (appeal to mercy) nothing else. All stated the respondent was a good man, which is not an issue. The thrust of the character witnesses is that because of his pro bono work respondent should be reinstated. I would summarize the character witnesses' evidence as being of no help in weighing whether respondent has been guilty of practicing law during his suspension.

I am authorized to state that HARGRAVE, C.J., SIMMS, J., and MEANS, S.J., concur in these views.