In the Matter of the **REINSTATEMENT OF Scott William KATZ, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

SCBD No. 3963.

Supreme Court of Oklahoma.

Oct. 24, 1995.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, for Respondent.

Scott William Katz, Lake Worth, Florida, Pro Se.

SUMMERS, Justice:

Petitioner Scott William Katz seeks reinstatement into the Oklahoma Bar Association after being disbarred in 1986. We denied reinstatement after a hearing in 1992. He has reapplied. The trial panel recommends that reinstatement again be denied. After a thorough review we agree.

## THE RELEVANCY QUESTION

We must first address Petitioner's argument with respect to the evidence presented at the reinstatement hearing. Throughout the hearing Petitioner repeatedly urged that only his conduct since his last reinstatement petition, which was filed in 1992, was relevant for consideration by this Court. He has presented no authority to support that, although he has been given ample opportunity to do so.

Our responsibility with regard to a petition for reinstatement is not to review the recommendation of the trial panel; rather we exercise our original jurisdiction, as in all attorney disciplinary matters. Rule 11.4 of the Rules Governing Disciplinary Proceedings states that the applicant seeking reinstatement has the heavy burden of showing that, if readmitted, his conduct will conform to the high standards required of members of the Bar.

"In assessing the likelihood of the applicant's future good conduct we are to consider the nature of his past transgressions and to consider applicant's attempts to rectify the harm caused by those transgressions." *In the Matter of the Reinstatement of Elias*, 759 P.2d 1021, 1022 (Okla.1988). In making this assessment we must necessarily look to the gravity of the original offense and the

petitioner's conduct since the offense which led to discipline. *In the Matter of Reinstatement of Kamins,* 752 P.2d 1125, 1130 (Okla. 1988). While the evidence of an applicant's character since the previous reinstatement petition is relevant and must be carefully considered, that evidence is not all that may be considered. It must be reviewed along with the evidence of the applicant's conduct which led to discipline, and his conduct since the time of discipline, in this case, disbarment. *Kamins,* 752 P.2d at 1130. This ruling is not a departure from our previous case law; it follows the mandate of *Kamins* that we consider the seriousness of the original transgression as well as the applicant's conduct since imposition of discipline.

## REINSTATEMENT

■ Having made this determination, we turn to the evidence presented in the record. Rule 11.4 places the burden of proof on the applicant to show by clear and convincing evidence that he or she should be readmitted into the Bar. Rule 11.5 requires the trial panel to make three findings: (1) whether the applicant possesses good moral character, (2) whether the applicant engaged in the unauthorized practice of law and (3) whether he possess the competency and learning required to practice law. *In the Matter of Reinstatement of McConnel,* 886 P.2d 471, 473 (Okla.1994); *In the Matter of Reinstatement of Elias,* 759 P.2d 1021, 1026 (Okla. 1988). In addition to these three things, we have enunciated eight factors to be considered for reinstatement: (1) present moral fitness of the applicant, (2) demonstrated consciousness of the wrongful conduct and disrepute brought to the profession, (3) the extent of the applicant's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline, (6) time elapsed since the original offense, (7) applicant's maturity, character and experience at the time of disbarment, and (8) applicant's competence in the law. *Kamins,* 752 P.2d at 1130; *In the Matter of Reinstatement of Smith,* 871 P.2d 426, 428 (Okla.1994).

Katz has never practiced in the State of Oklahoma. He was disbarred on June 26, 1986, from the Florida State Bar. The Florida Supreme Court found that Petitioner divulged a client's confidential matters to the client's adversary, committed moral extortion by pressuring a client to pay him money when the client was under no obligation to do so, and lied under oath to a federal judge. This Court disbarred him on August 13, 1986, based on the Florida disciplinary proceedings.

Petitioner then sought reinstatement prematurely. We dismissed the first petition for reinstatement because of its premature filing. After asking the Oklahoma Bar Association to ascertain the date on which he could file a reinstatement petition, Petitioner again filed a premature reinstatement petition, which we again dismissed.

A third petition for reinstatement was timely filed. The Professional Responsibility Tribunal recommended that reinstatement be denied and we agreed. *In the Matter of Reinstatement of Katz,* 847 P.2d 1385 (Okla. 1992). Specifically, we found that he had failed to return to the disciplinary hearing after a break, and that he had pled *nolo contendere* to the misdemeanor charge of "practicing law while disbarred." We also found that he failed to present any evidence (other than his own testimony) which would support his assertion that he was of good moral character. Several witnesses, including judges, testified that he should not be readmitted.

In the disciplinary hearing on this, his fourth petition for reinstatement, petitioner was questioned as to why he failed to return to the previous disciplinary hearing. He testified that he spoke with the Bar Association's investigator and told him that his flight arrangements had changed, and that he was leaving to go back to Florida in order to attend a class that evening. The investigator testified that no such conversation occurred.

Counsel for the Bar Association introduced over one hundred letters, pleadings, motions and affidavits written by the petitioner. Most of these documents contained threats against judges and other attorneys. Many of them asked that criminal charges be filed against attorneys or judges. An employee for the Florida Bar Association testified that

petitioner filed so many bar complaints against attorneys and judges that special procedures had to be implemented to handle his filings.

Petitioner also filed numerous lawsuits, including ones against this Court and the Florida Supreme Court. He therein asserted that the members of both courts were guilty of "high crimes and misdeeds," as well as being "corrupt, stupid, unscrupulous and immoral. . . ."

In the early years following his disbarment Katz displayed a remarkable weakness for intemperate language, both in his court filings: "[Judge] Richard B. Burk is nothing but a motherfucking son-of-a-bitch" and Burk's daughter "a common whore and trollop", and in his correspondence with fellow lawyers: "Zaretsky, you're an asshole." He testified he apologized to and made up with the Florida Supreme Court Justice he described in a lawsuit as "the bimbo, Rosemary Barkett." He has been held in contempt on at least two occasions. To Katz's credit he has cleaned up his invective since the hearing of 1992.

■ But the record is replete with an ongoing pattern of threatening correspondence, a mild example of which is his closing sentence in a letter to a court clerk:

> "If everything is not submitted to the district court by this Friday, April 2, 1993, I am filing suit against you in the United States District Court for negligence, incompetence and ineptness in office."

In an era when many veteran lawyers lament a perceived decline in professionalism, this Court does not encourage the practice of law by intimidation.

By his own admission, he has, over the last several years, filed more than seventy lawsuits on behalf of himself.[1] It appears that he filed lawsuits, bar complaints and judicial complaints against virtually anyone who was not in agreement with him. He accused judges and attorneys of crimes such as extortion, bribery, drug addiction, alcohol addiction, assault, misappropriation of funds, perjury, grand theft, as well as conduct such as

general stupidity and smoking in a non-smoking area. He was sanctioned by the federal courts for filing "scandalous, libelous, and impertinent matters." *Katz v. Looney*, 733 F.Supp. 1284, 1287 (W.D.Ark.1990). We have no evidence that any of his suits have been successful.

When applying to the bar association in another state, he represented that he had never pled *nolo contendere* to any misdemeanor or felony charges. However, petitioner's own filings with this Court indicate that he entered pleas of *nolo contendere* to the misdemeanor of petty larceny (reduced from the charge of grand theft), and one count of practicing law without a license (reduced from the five counts charged).

Petitioner has also attempted to mislead this Court by indicating in his brief that twelve letters from various high ranking officials vouch for his good moral character. In fact, only two of the letters contain recommendations of any kind. The other letters make no comment whatsoever as to his character. In fact one such "letter of recommendation" states in full:

> Thank you for the invitation to join you at Ben's for dinner on the 3rd. I regret, however, that due to a previous commitment I must decline your kind offer.
> Thanks again for thinking of me.

Counsel for the Bar Association introduced into evidence depositions taken in 1994 of various attorneys and judges who had dealt with petitioner. Unequivocally, all refused to recommend that he be reinstated.[2] Judge James Carlisle, Judge Richard Burk, Judge Jack Cook, Judge Edward Fine and attorney Terry Resk declined to recommend petitioner for reinstatement.

Petitioner testified that at the time the scurrilous documents and letters were written, he was under much stress from criminal charges pending against him and by having a very ill mother. He urges that this Court should focus on all the legal seminars he has attended, as well as his having obtained further education in a doctoral program. He states that he wants to be a teacher.

---

1. The Bar Association presented evidence that he filed more than one hundred actions.

2. Daniel Bakst stated in his deposition that he did not recommend petitioner be reinstated. He later wrote a letter of recommendation. His is one of the letters submitted by petitioner.

The trial panel made findings that petitioner had left the prior reinstatement hearing in mid-session, unannounced. They found his story with regard to speaking to the Bar investigator unbelievable. The panel continued by finding that petitioner had "a history of being absolutely vitriolic in his treatment of judges before whom he practiced in Florida", and that his involvement in multitudes of lawsuits was at best "scandalous." The panel recommended denial of reinstatement.

 We must agree. Consideration of the *Kamins* factors lead us to conclude that petitioner has failed to meet his heavy burden to gain reinstatement. His conduct resulting in disbarment was such that it brought disrepute on to the legal profession. His behavior and comments at the hearing show that he is still in denial that his actions warranted discipline or criminal prosecution. Although he shows some remorse for his earlier choices of language, his anger at the Florida Bar and the state's judges and prosecutors remains unabated. He has continued his pattern of harassing lawyers and judges by filing complaint after complaint. He has presented only scant evidence of his "good character." He also pled *nolo contendere* to the charge of practicing law without a license. While we commend Petitioner on his continued accumulation of education, this does not overcome his burden of showing, by clear and convincing evidence, that he is presently fit to be a member of this Bar. It is the duty of this Court to safeguard the interests of the public welfare. It is to protect the public that such a high standard of proof is required before an applicant can be readmitted. "Finally, there must be a determination that reinstatement would not adversely effect the Bar." *In the Matter of Reinstatement of Smith,* 871 P.2d 426, 428 (Okla.1994); *In the Matter of Reinstatement of Cantrell,* 785 P.2d 312, 313 (Okla.1989). Petitioner's actions have adversely affected the legal profession. His disrespect for the legal system is apparent. Reinstatement is denied.

## ASSESSMENT OF COSTS

 The Bar Association filed an application to assess costs, totalling $4528.96. Petitioner urges that he should not be required to pay the costs submitted by the Bar Association in connection with the investigation and preparation of his case. He contests the costs of the transcript and the depositions. As for the transcript, he claims that "95% of the hearing" was a "rehashing of matters discussed or dealt with at the first 'reinstatement' application." He asserts that he should not be required to pay for the depositions because he was not in attendance for all of them. He claims that he is not required by law to pay for travel expenses of the trial panel members. If required by law to pay such expenses, he urges that the receipts submitted by the trial panel members are "entirely bogus." He makes that same claim with regard to the travel expenses of the General Counsel and the investigator, who were required to travel to Florida to obtain copies of court documents, and to conduct depositions. He asserts that the long distance costs are "bogus," that the receipts for copying costs are unverified, and that he is not required by law to pay for the publication expense associated with his reinstatement.

Petitioner is correct in urging that Rule 11.1(c) explains the applicant's responsibilities with regard to application costs:

> The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professions Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the applicant.

Clearly, Petitioner is responsible for the costs of the transcript and one copy. Petitioner's argument that the hearing was lengthened by unnecessary "rehashing" need not be again addressed by this Court, as we have held earlier in this opinion that Petitioner's conduct since the time of disbarment *was* relevant to this reinstatement proceeding. As for the depositions, the records show that Petitioner was given notice of the times and dates but chose not to attend.

As for the travel expenses of both the General Counsel and the investigator, these were clearly related to the investigation and the processing of Petitioner's application for reinstatement. Depositions were taken and various courthouses were visited in order to sort through the numerous filings in the mul-

titudes of lawsuits filed by petitioner. Likewise the copying costs and long distance calls are attributable to this investigation.

The publication expense was incurred when notice was published in a Miami/Palm Beach newspaper, notifying individuals of the pending reinstatement petition and asking for relevant information. This publication is required by Rule 11.3(b) which states that notice of the hearing shall be published in a newspaper of general circulation in the county of the residence of the applicant.

The travel expenses of the trial panel members clearly arose out of the processing of the petition for reinstatement. Rule 11.3(a) requires that a trial panel be appointed and hold a hearing. All expense vouchers are dated March 4, 1994, which was the date of the hearing. We find that Petitioner is responsible for these expenses.

The Petitioner is hereby ordered to pay costs in the amount of $4528.96 within ninety days from the date this opinion becomes final.

All Justices concur.