OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF KERR

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE REINSTATEMENT OF KERR
2015 OK 9
Case Number: SCBD-6158
Decided: 03/03/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 9, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF: ROBERT SAMUEL KERR, IV TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS.

Petition for Reinstatement

¶0 The Petitioner, Robert Samuel Kerr, IV seeks reinstatement to membership in the Oklahoma Bar Association following his suspension from the practice of law for two years and one day. The Oklahoma Bar Association supports reinstatement and the Trial Panel unanimously finds and recommends that Petitioner has conformed to the requirements of reinstatement and that he should be reinstated to the Oklahoma Bar Association. Upon de novo review, we determine that reinstatement should be granted and impose costs of $933.52 within ninety (90) days from the date this opinion becomes final.

PETITION FOR REINSTATEMENT GRANTED;
PETITIONER ORDERED TO PAY COSTS OF $933.52.

John W. Coyle, III, COYLE LAW FIRM, Oklahoma City, Oklahoma, for petitioner.
Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for respondent.

WATT, J.:

¶1 Robert Samuel Kerr, IV ("Kerr") entered an Alford plea to a misdemeanor charge of obstruction of a public officer on April 5, 2012. He was immediately suspended by the Oklahoma Bar Association ("Bar") and directed to show cause why a final order of discipline should not be imposed or present mitigating evidence. The Professional Responsibility Tribunal ("Tribunal") held a hearing on July 30, 2012. After conducting a de novo review of the Tribunal's recommendations, and giving due consideration to the mitigating factors, we suspended Kerr for two years and a day, beginning on the date of the interim suspension, April 19, 2012. On August 12, 2014, more than two years after his suspension, Kerr filed a petition for reinstatement.

¶2 Upon a de novo review,[1] we determine that the attorney presented clear and convincing evidence that, if readmitted, his conduct would conform to the high standards of a member of the Bar.[2] Costs of $933.52, are imposed.[3] Our decision to allow Kerr to return to the practice of law is supported by: testimony from a former member of the Oklahoma Bar's Board of Governors, former state senator, employer, co-worker, business associate, and Kerr's spouse, indicating that the attorney's reinstatement would be advantageous to the judicial system, the Bar, and his community; Kerr's unqualified acceptance of responsibility for his admittedly wrongful acts;[4] his recognition that he must react differently to situations that pose ethical dilemmas; and his attempts to help young lawyers avoid the pitfalls of his experiences in the practice of law.

FACTS RELEVANT TO REINSTATEMENT PROCEEDINGS

¶3 Kerr was admitted to the Oklahoma Bar in September 2006, and became an associate attorney with the firm of Ogle & Welch. He handled all misdemeanor cases for the firm. In the spring of 2007, Ogle & Welch undertook representation of a client who was charged in Oklahoma County District Court with driving under the influence. Kerr served as defense counsel for this client. The criminal matter was resolved with the client receiving a deferred sentence, but then was later scheduled for a driver's license revocation hearing with the Department of Public Safety. Attorneys at the firm of Ogle & Welch initiated a series of steps to offer a bribe to an Edmond Police officer in exchange for his absence at the hearing. The officer in question reported the bribery attempt to his superiors and a police investigation commenced.

¶4 On July 30, 2010, Kerr was charged with the felony offense of offering a bribe, in violation of 21 O.S. 2011 §381[5]. In April 2012, that charge was reduced under a plea agreement to a misdemeanor, obstruction of a public officer, in violation of 21 O.S. 2011, §540[6]. Pursuant to the plea agreement, Respondent received a two-year deferred sentence and a term of probation until April 5, 2014. Kerr completed the term of probation and the criminal case has been dismissed [7].

¶5 The reinstatement hearing was held before the trial panel on October 17, 2014. At the conclusion of the hearing, the Bar expressed support of Kerr's reinstatement application. The trial panel issued its unanimous report on December 8, 2014 finding that Kerr had presented clear and convincing evidence of all the factors necessary for reinstatement and recommending the same. On the same date, the Bar filed its application for the assessment of costs in the amount of $933.52. Kerr filed his brief in chief on December 22, 2014, and the Bar waived the right to file an answer brief.

JURISDICTION, STANDARD OF REVIEW,
AND BURDEN OF PROOF

¶6 It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of practitioners of the law. The duty is vested solely in this department of government.[8] Our determinations are made de novo.[9] Although given great weight, [10] neither the findings of fact of the trial panel nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[11] We are bound neither by its findings nor its assessments as to the weight or credibility of the evidence.[12] A thorough and complete exploration of all relevant facts is mandatory in consideration of matters to regulate the practice of law and legal practitioners.[13] Attorneys suspended for disciplinary reasons will not automatically be reinstated on a prima facie showing that the attorney has not engaged in improper conduct during the suspension period.[14]

¶7 An applicant seeking reinstatement to the practice of law bears a heavy burden which is the same whether the attorney was disbarred or suspended for two years and one day. [15] Before being readmitted to the practice of law, it must be established that the lawyer's conduct will conform to the high standards required of a member of the Oklahoma Bar. Under Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A, the burden is on the applicant to demonstrate by clear and convincing evidence that the prerequisites for reinstatement are satisfied. The more severe the disciplinary offense, the heavier the burden the attorney must overcome to gain reinstatement to the Bar.[16] In addition, the petitioner must present stronger proof of qualifications than one seeking first time admission.[17]

¶8 Rule 11.5, Rules Governing Disciplinary Proceedings, 5 OS. 2011, Ch. 1, App. 1-A requires the trial panel to make specific findings regarding whether the petitioner: 1) possesses the good moral character which would entitle the attorney to be admitted to the Bar; 2) has engaged in the unauthorized practice of law during the period of suspension; and 3) possesses the competency and learning in the law required for admission to the practice of law in the State of Oklahoma. In addition, this Court considers the following eight factors in making a reinstatement decision: 1) the applicant's present moral fitness; 2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession; 3) the extent of rehabilitation; 4) the original misconduct's seriousness; 5) conduct after resignation; 6) time elapsed since suspension; 7) the applicant's character, maturity, and experience when suspended; and 8) present legal competence.[18] Each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors.[19]

¶9 a. Clear and convincing evidence supports the attorney's readmittance to the practice of law in Oklahoma

¶10 The trial panel found that Kerr established by clear and convincing evidence that he had complied with all procedural rules governing the reinstatement of attorneys and by unanimous vote recommended that Kerr be reinstated. The Bar supports Kerr's application for reinstatement to the practice of law. [20] We determine that the trial panel's recommendation for reinstatement is meritorious.

1) The attorney presented stronger proof of his present moral fitness to practice law than would a first-time applicant for admission.

¶11 Six witnesses appeared before the trial panel in support of Kerr's reinstatement. Andrew Rice, a former state senator, testified that he observed Kerr to have "tremendous remorse" over his actions that led to the suspension. The former senator also testified that Kerr has a new approach on life filled with gratitude and humility and that Kerr's priorities demonstrate the attorney's commitment to his family and community. He has no reservation about Kerr's integrity if allowed to practice law. [21]

¶12 Powerful testimony was provided by the employer and owner of a local oil and gas exploration company where Kerr started at an entry level land man position more than seven years ago. The employer testified that over the years Kerr gained his trust and confidence and now trusts Kerr with millions of dollars worth of proprietary information of his industry clients. Kerr was hand picked to be one of four managers at the company because of his consistent integrity, honesty and hard work. As a manager, Kerr is one of four people in the company who is trusted with the same proprietary information the employer has. [22] Likewise, one of the employer's business clients testified that he trusts Kerr to handle millions of dollars worth of property interests and that Kerr has great integrity and the moral fitness to be an attorney. [23]

¶13 Additional insight was offered by Joseph Michael Vorndran ("Vorndran"), an attorney who has served on the OBA Board of Governors and the Board of Directors of the OBA Young Lawyers Division. Vorndran has known Kerr since they were in law school. He testified Kerr has always been truthful about the facts and circumstances of his suspension and demonstrated remorse. Vorndran expressed he has no reservations about Kerr's fitness to practice law and that Kerr's legal competence is better now through life experiences and business experiences as a landman. In his opinion, Kerr has stronger qualifications than one being initially considered for admission to the Bar. [24]

¶14 Kerr's wife of ten years and another witness who is a long time friend and practicing attorney also testified. Both witnesses had consistent opinions regarding the depth of Kerr's remorse over his actions which then became the impetus for his internal transformation. Today, Kerr's actions reflect that he has re-aligned his priorities, gaining wisdom in reflection before acting and discerning when a potential ethical issue arises. In addition, Kerr considers the needs of his family and places them at a higher priority today, recognizing that his actions have a lasting impact on them. The trial panel noted and the transcript reflects testimony that Kerr has not practiced as an attorney during this period of suspension.[25]

¶15 All that is required of a first-time applicant is that the individual show that he or she has "good moral character, due respect for the law, and fitness to practice law" without any demand of proof of the same.[26] Due to the gravity of Kerr's prior breach in ethical judgment, he must meet a higher burden to be considered for reinstatement. When viewed in its entirety, the evidence goes well beyond those requirements and is clear and convincing[27] in support of the attorney's present moral fitness to return to the practice of law in Oklahoma.[28]

2) Kerr's consciousness of his wrongful conduct, the disrepute his actions brought upon the legal profession, and the attorney's rehabilitation

¶16 The evidence provided at the hearing reflect the depth of Kerr's awareness of his wrongful conduct, the negative impact his actions had on the legal profession and the extent of his personal growth. As soon as Kerr was aware of the potential for criminal implications for his actions, and before any formal criminal or bar disciplinary action had been initiated, Kerr voluntarily ceased to practice law, and he has publicly acknowledged the gravity of his misconduct. Since that time, Kerr realizes his lapse in judgment showed selfishness, arrogance and the failure to consider the ramifications of his actions to his wife, children, and to the legal profession.[29] Further evidence of remorse is reflected in the article Kerr wrote and published in the Oklahoma Bar Journal where, in a very public manner, he accepts full responsibility for his actions and acknowledges the wrongfulness of his conduct and the disrepute he brought on the legal profession. [30]

3) The severity of the attorney's misconduct does not prevent reinstatement

¶17 The misdemeanor criminal charges have been dismissed against Kerr. [31] Multiple witnesses testified about Kerr's hard work and respect he has gained as a leader within his company, having been selected as one of four managers for 200 employees. Kerr's actions have gained the trust and confidence of clients and he is trusted by his employer and clients with millions of dollars of proprietary information. During the time of his suspension, he has gained extensive business experience and pursued continuing legal education in his area of work. There was consistent testimony that Kerr is better qualified now as an attorney than when he graduated from law school.

¶18 The evidence reflects that Kerr has not engaged in any activity as an attorney since the date of his suspension. Further, the evidence demonstrates that Kerr voluntarily stepped down and ceased practicing law even before formal discipline action was taken.

¶19 The more severe the offense the heavier the burden the applicant must overcome to gain reinstatement. However, each application for reinstatement must be considered on its own merits. It will fail or succeed on the evidence presented and the circumstances of the attorney's case.[32] Furthermore, a lawyer's commission of a felony or other grave misconduct is not an insurmountable barrier to reinstatement.[33]

¶20 Our primary duty is to protect the public, the judiciary and the legal profession. Therefore, we take our responsibility of passing on an application seeking reinstatement for one who has previously failed to meet the profession's standards with utmost seriousness.[34] Before reinstating an attorney to the Bar, the Supreme Court must have a firm conviction that the lawyer will not engage in similar misconduct. Even considering the testimony of the three attorneys opposing reinstatement, the quality and quantity of evidence in favor of reinstatement convinces us that Kerr will provide, once again, valuable services to clients, the practicing bar, the judiciary, and his community.

CONCLUSION

¶21 Under the particular evidentiary facts and circumstances in this matter, we agree with the trial panel's unanimous recommendation of reinstatement and the Bar's support for reinstatement of Kerr. Members of the judiciary and the practicing bar have placed faith in Kerr's ability to contribute to the legal profession, the judiciary, and his local community. We trust that we will not be faced with the unpleasant task of reviewing any future allegations of misconduct.

¶22 Upon a de novo review, we grant the attorney's application, supported by clear and convincing evidence. Reinstatement is conditioned upon the attorney's payment of costs in the amount of $933.52 within ninety (90) days from the date this opinion becomes final.[35]

PETITION FOR REINSTATEMENT GRANTED;
PETITIONER ORDERED TO PAY COSTS OF $933.52.

REIF, C.J., COMBS, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, JJ. - concur

KAUGER, GURICH, JJ. - not participating

FOOTNOTES

[1] In re Reinstatement of Otis, 2007 OK 82, ¶7, 175 P.3d 357; In re Reinstatement of Massey, 2006 OK 21, ¶12, 136 P.3d 610; Matter of Reinstatement of Blevins, 2002 OK 78, ¶3, 59 P.3d 510.

[2] Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A providing:

"An application for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement shall be required to present stronger proof of qualification than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the application complied with Rule 9.1 of these rules."

Matter of Reinstatement of Katz, 1995 OK 115, ¶20, 907 P.2d 1029.

[3] Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp. 2002, Ch. 1, App. 1-A providing in pertinent part:

"A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred or who has resigned membership in the Association may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association.

. . . (c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application. . . ."

State ex rel. Oklahoma Bar Ass'n v. Pacenza (Pacenza I), 2006 OK 23, ¶2, 136 P.3d 616.

[4] See ¶¶ 11-14, 16 and accompanying footnotes, infra.

[5] 1999 Okla. Sess. Laws, 1st Ex Sess., ch. 5 §97

[6] R.L. 1910, §2252

[7] Transcript of Reinstatement Hearing, October 17, 2014, Robert Samuel Kerr, IV testifying in pertinent part at p. 61:

Q . . . You testified that the deferred period was over in your criminal case but you didn't actually testify that the case had been dismissed. Has it been dismissed?

A Yes, Ma'am. By nature - - a deferred sentence is actually dismissed automatically.

Q I just wanted to have that clear on the record.

A The answer is yes ma'am.

[8] Title 5 O.S. 2011 §13; State ex rel. Oklahoma Bar Ass'n v. Combs, 2008 OK 96, ¶11, 202 P.3d 803; Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, ¶4, 624 P.2d 1049.

[9] In re Reinstatement of Otis, see note 1, supra; State ex rel. Oklahoma Bar Ass'n v. Hulett, 2008 OK 38, ¶4, 183 P.3d 1014; Matter of Reinstatement of Jones, 2006 OK 33, ¶7, 142 P.3d 380.

[10] In re Reinstatement of Holden, 2003 OK 28, ¶5, 66 P.3d 416; Matter of Reinstatement of Kamins, 1988 OK 32, ¶18, 752 P.2d 1125.

[11] Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A; State ex rel. Oklahoma Bar Ass'n v. Besly, 2006 OK 18, ¶2, 136 P.3d 590; Matter of Reinstatement of Rhoads, 2005 OK 53, ¶2, 116 P.3d 187.

[12] State ex rel. Oklahoma Bar Ass'n v. Raskin, 1982 OK 39, ¶11, 642 P.2d 262.

[13] Tweedy v. Oklahoma Bar Ass'n, see note 8 supra.

[14] Matter of Reinstatement of Pierce, 1996 OK 65, ¶19, 919 P.2d 422.

[15] Matter of Reinstatement of Jones, II, 2009 OK 1, ¶4, 203 P.3d 909; Matter of Reinstatement of Blevins, see note 1, supra.

[16] Matter of Reinstatement of Jones, see note 9, supra.

[17] In re Reinstatement of Fraley, 2005 OK 39, ¶37, 115 P.3d 842.

[18] In re Reinstatement of Otis, see note 1, supra; Matter of Reinstatement of Blevins, see note 1, supra; Matter of Reinstatement of Kamins, see note 10, supra.

[19] In re Reinstatement of Page, 2004 OK 49, ¶3, 94 P.3d 80; In re Reinstatement of Anderson, 2002 OK 64, ¶4, 51 P.3d 581.

[20] Report of the Trial Panel, filed on December 8, 2014, providing in pertinent part at p. 6:

". . . As a result of that investigation, Respondent concludes that there is nothing to suggest that Petitioner is unfit for reinstatement. The Respondent joins in support of Petitioner being reinstated to the practice of law."

"IT IS THEREFORE THE FINDING AND RECOMMENDATION OF The tribunal, by a unanimous vote, that the Petitioner, Robert Samuel Kerr, IV should be reinstated to the Oklahoma Bar Association.

[21] Transcript of Reinstatement Hearing, October 17, 2014, Andrew Rice testifying in pertinent part at pp. 74-75:

" . . . Q Has he expressed remorse to you?

A . . . I wouldn't be here in support of Sam if I didn't feel personally as my friend that he had tremendous remorse and had done the restorative work on himself to begin anew.

Q Do you notice in Sam a change in his humility or I guess you didn't know him as much before?

A . . . Absolutely. ... [Y]ou can tell when people's lives are going better. . . . It's clear to me as Sam's friend he is a new guy and has a new approach to life and a lot of gratitude and humility.

Q Do you have any reservation at all about him, if he is allowed now to practice law?

A No.

[22] Transcript of Reinstatement Hearing, October 17, 2014, Calvin Turner, Jr. testifying in pertinent part at pp. 78 - 84:

at p. 78: "Q. . . Tell us what you think about Sam Kerr.

A I think he is a very nice young man. I think he - - you - - I think I made a mistake (sic) and he knows it and I think he is very sorry for it. I think he loved being an attorney. I think that is one of his passions. . . . He came in and started at the bottom and now he is - - I have over 200 people that work with me and Sam is one of the four managers that I have and I handpicked them all. . . . I trust him with millions and millions of dollars worth of information every day that clients trust me with. . . . He has done a great job and that's - he is a great dad. A great dad. I mean, I hope my son grows up to be like Sam.

at pps. 81-82: Q . . . You know, how important is honesty in your business? Explain to them how important honesty is and all of the proprietary information that Sam has and how many people you trust really with that information.

A It means everything. . . we have a lot of information that other people would like to get their hands on because they would like to get out there and bust our lease places. It's very important. It's money in the bank if you can get one of those maps out. . . . And Sam is one of four people that have the same information I have. I trust four guys at my company with everything and Sam is one of them.

at pps. 82-83 Q What are the qualities that you require of those that you handpicked to be managers?

A I think integrity, honesty, hard work, the ability to lead and get things done.

[23] Transcript of Reinstatement Hearing, October 17, 2014, Daniel Smith testifying in pertinent part at pps. 100 - 102.

Q And why do you trust Sam Kerr?

A I have never had to question his integrity. He has always done a good job for us. . . .

Q . . . Now what did Sam tell you about his license to practice when you sought him out four or five years ago to do that big project?

A He made it apparent that he was not able to practice law. And actually I brought up the question because me always trying to save a buck for Range, you know, here I have a guy that runs title for us and also I knew he went to law school. I was trying to determine if he could go ahead and do title opinions in addition to ownership reports which title opinions are conducted by a licensed attorney and Sam made it apparently clear that he could not.. . .

Q . . . Would you hire Sam as a lawyer?

A I would.

Q Would you trust him?

A I do.

Q What do you think about Sam? You have known Sam particularly well over the last five years. Do you have an opinion of his moral fitness to be a lawyer?

A I think he has great integrity. He is a great family man. I know him inside and outside of work. And I think he is plenty fit. I think he will do an excellent job and I trust him. I don't have to doubt him. He hasn't shown me any behavior to say otherwise.

[24] Transcript of Reinstatement Hearing, October 17, 2014, Joseph Michael Vorndran testifying in pertinent part at pps. 114-118:

Q . . . Do you have an opinion as to Sam's present moral fitness to practice law?

A Yeah. I think sitting here today Sam is one of the more introspective people that I know. . . . He doesn't react without thinking which is something, quite frankly, he did before this. And I think you would see it in lots of places. It was really hard for Sam to say no to anyone or anything. . . . He is much more cerebral about things now. He is somebody that I rely upon for advice because of that, whereas I probably would not have in 2006. So from that standpoint, I think the moral and ethical character is - I regard it very highly because he is so thoughtful about his actions at this point and time.

Q Do you have any reservations at all about Sam being allowed to practice law?

A . . . No I don't. . . . But I don't have reservations that Sam would ever allow behavior like this to ever occur again. . . .

Q Tell me about Sam's remorse over what's happened.

A . . . Until some resolution came from this he didn't feel like it was appropriate for him to use his license for financial gain or to hurt other people or for anything. . . . When others in his situation have maintained active practices during pendency of investigation and disciplinary proceedings, he did not, and to me that was a sign of remorse. The other thing was he came to me and said, "I want to do something that warns people about this". And I see in front of me Exhibit 1 [OBJ Article, "The High Price of an Unethical Decision", by Robert Samuel Kerr IV] has already been admitted.

Q Yes, sir.

A That was something that was borne of that conversation which I think - I know it was a difficult task for him to undertake writing. And then to pen it, I think shows a great deal of courage as well and owning up to what occurred.

[25] Transcript of Reinstatement Hearing, October 17, Douglas Michael Jacobson, pps. 85-91, and Jennifer Burgin Kerr, pps. 105-107.

[26] Rule 1, Rules Governing Admission to the Practice of Law, 5 O.S. 2011, Ch. 1, App. 5; Matter of Reinstatement of Jones, II, see note 15 supra.; Matter of Reinstatement of Jones, see note 9, supra.

[27] Clear and convincing evidence warranting reinstatement to the bar is that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Matter of Reinstatement of Massey, see note 1, supra; In re Reinstatement of Pacenza (Pacenza II), 2009 OK 9, fn. 37, 204 P.3d 58.

[28] Evidence of rehabilitation lends itself to a decision allowing reinstatement. Matter of Reinstatement of Wright, 1995 OK 128, ¶19, 907 P.2d 1060.

[29] Transcript of Reinstatement Hearing, October 17, 2014, Robert Samuel Kerr, IV testifying in pertinent part:

Q . . . How did you get the mindset that it was all right, that it was something that you might do is to give someone money in exchange for them not showing up at a hearing. . . . What was -what about that atmosphere there caused you to compromise yourself and do that?

A As embarrassing and ignorant as it is to admit, I knew then that at its base level that it was wrong but I would be untruthful if I didn't say that the mere fact that it was even suggested by the person that was suggesting it, although I knew it didn't make it legal certainly and it didn't make it right, it gave me some sort of plausible reason why, okay, this is not that big of deal and will do it to help a client make sure he receives red carpet treatment and keeps his driver's license and pilot's license.

Q What do you think about it now?

A I think its embarrassing and ignorant and arrogant and selfish. pps. 16-17

Q . . . But about a year after this happened, when the time was right, did you and I go meet with David Prater and investigator, Gary Eastridge who works with Mr. Prater?

A We did.

Q And did you tell them exactly what you told the panel today, the truth about what happened?

A Yes, sir.

Q And have you always told the truth, Sam Kerr, to everyone who would listen about these proceedings?

A Yes, sir. p. 21

Q . . . What do you - tell us about your present moral fitness and where you think you are in relation to when you joined the bar in 2007?

A . . . The difference between me today and then is that I have the obvious accumulation of just years since the incident, so the benefit of hindsight. I am not the selfish person and the arrogant person that I obviously was in 2007 when I committed that act because I clearly didn't think about ramifications outside of myself because I put my family, my wife, my two kids, my extended family, the Bar Association, I gave them no thought. I acted selfishly and I acted above the rules. . . . I can't do - I cannot do that to my family again and I will do anything and everything I can to make sure that the decision like that, an egregious lapse in judgment, an arrogant decision will never happen again. pps. 33-34

Q . . . Tell us about what you think about the disrepute, what you did brings upon the bar as a whole, the public's perception of lawyers.

A I contributed to an unallowable perception that justice can be bought. I contributed to the public thinking that perhaps some people are above the law. And as a lawyer, I swore an oath and have a responsibility that's greater than the lay person to perpetuate the exact opposite of those ideas. p. 38

[30] Exhibit 1, Kerr, Robert Samuel, IV, "The High Price of an Unethical Decision", The Oklahoma Bar Journal, Vol. 84, No. 33, 12-14-13, pps. 2653 -2656.

[31] See footnote 7 supra.

[32] Matter of Reinstatement of Jones II, see note 15, supra.

[33] Matter of Reinstatement of Seelye, 2005 OK 34, ¶4, 115 P.3d 836; Matter of Reinstatement of Anderson, see note 19, supra; Matter of Reinstatement of Page, see note 19, supra; Reinstatement granted in the following cases: Matter of Reinstatement of Johnston, 2007 OK 46, ¶13, 162 P.3d 922 [Attorney convicted of misdemeanor account of attempting to possess a steroid and four felony counts related to the distribution of illegal drugs.]; Matter of Reinstatement of Blevins, see note 1, supra [Attorney pled guilty to state felony charge.]; Matter of Reinstatement of Gassaway, 2002 OK 48, ¶5, 48 P.3d 805 [Attorney served sentence for making a false statement on a tax return.]; Matter of Reinstatement Wright, see note 28, supra [Attorney convicted of felony cocaine distribution charge.]; State ex rel. Oklahoma Bar Ass'n v. Samara, 1989 OK 80, ¶10, 775 P.2d 806 [Attorney convicted of felony involving income tax evasion.].

[34] Matter of Reinstatement of Jones II, see note 15, supra.

[35] Rule 11.1, Rules Governing Disciplinary Proceedings, see note 3, supra; State ex rel. Oklahoma Bar Ass'n v. Pacenza (Pacenza I), see note 3, supra.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 32, 752 P.2d 1125, Reinstatement of Kamins, Matter of
Discussed
 1989 OK 80, 775 P.2d 806, State ex rel. Oklahoma Bar Ass'n v. Samara
Discussed
 2002 OK 48, 48 P.3d 805, MATTER OF REINSTATEMENT OF GASSAWAY
Discussed
 2002 OK 64, 51 P.3d 581, IN THE MATTER OF REINSTATEMENT OF ANDERSON
Discussed
 1995 OK 115, 907 P.2d 1029, 66 OBJ 3498, In the Matter of the Reinstatement of Katz
Discussed
 1995 OK 128, 907 P.2d 1060, 66 OBJ 3717, Reinstatement of Wright, Matter of
Discussed
 2002 OK 78, 59 P.3d 510, IN THE MATTER OF THE REINSTATEMENT OF BLEVINS
Discussed
 2003 OK 28, 66 P.3d 416, IN THE MATTER OF THE REINSTATEMENT OF HOLDEN
Discussed
 2004 OK 49, 94 P.3d 80, IN THE MATTER OF THE REINSTATEMENT OF PAGE
Discussed
 2005 OK 34, 115 P.3d 836, IN THE MATTER OF REINSTATEMENT OF: SEELYE
Discussed
 2005 OK 39, 115 P.3d 842, IN THE MATTER OF THE REINSTATEMENT OF FRALEY
Discussed
 2005 OK 53, 116 P.3d 187, IN THE MATTER OF REINSTATEMENT OF RHOADS
Discussed
 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLY
Discussed
 2006 OK 21, 136 P.3d 610, IN THE MATTER OF THE REINSTATEMENT OF MASSEY
Discussed
 2006 OK 23, 136 P.3d 616, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PACENZA
Discussed
 2006 OK 33, 142 P.3d 380, IN THE MATTER OF THE REINSTATEMENT OF JONES
Discussed
 1996 OK 65, 919 P.2d 422, 67 OBJ 1833, In re Pierce
Discussed
 2007 OK 46, 162 P.3d 922, IN THE MATTER OF THE REINSTATEMENT OF JOHNSTON
Discussed
 2007 OK 82, 175 P.3d 357, IN THE MATTER OF THE REINSTATEMENT OF OTIS
Discussed
 2008 OK 38, 183 P.3d 1014, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HULETT
Discussed
 2008 OK 96, 202 P.3d 803, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed
 2009 OK 1, 203 P.3d 909, IN THE MATTER OF THE REINSTATEMENT OF JONES
Cited
 2009 OK 9, 204 P.3d 58, IN THE MATTER OF REINSTATEMENT OF PACENZA
Discussed
 2009 OK 1, 203 P.3d 909, IN THE MATTER OF THE REINSTATEMENT OF JONES
Cited
 1981 OK 12, 624 P.2d 1049, Tweedy v. Oklahoma Bar Ass'n
Discussed
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
Title 5. Attorneys and the State Bar
 Cite
Name
Level

 5 O.S. 13, Power of Supreme Court
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 381, Bribing Officers
Cited
 21 O.S. 540, Obstruction of Public Officer
Cited